### BRUST *v.* STATE.

### Opinion delivered May 1, 1922.

1.  INDICTMENT AND INFORMATION—FELONIOUS NATURE.—In an indictment alleging that defendant did unlawfully, feloniously, etc., assault and carnally know," etc., both verbs were modified by the adverb, and the indictment charged a felony.

2.  RAPE AND CARNAL ABUSE—JOINDER.—The offenses of rape and carnal abuse may be charged in the same count.

3.  WITNESSES — CROSS-EXAMINATION — IMPEACHMENT.—In a rape prosecution where prosecutrix was asked about incidents tending to show that she had a lascivious mind, which she denied, it was not error to refuse to admit evidence of such misconduct.

4.  JURY—REFUSAL TO PERMIT CHALLENGE.—It was not error to refuse to permit defendant to challenge a juror peremptorily after he had been accepted, where no reason therefor was given.

5.  CRIMINAL LAW—SEPARATION OF JURY.—In a criminal case where the court ordered the jury to be kept together, the dividing of the jury into separate groups was improper, and the burden devolved upon the State to show that they had been subjected to noxious influences.

6.  CRIMINAL LAW—SEPARATION OF JURY.—In a criminal prosecution where the court ordered the jury to be kept together, but they separated, and one juror went across the street to buy a cigar, testimony *held* to show that the jurors were not subjected to improper influence while so separated.

7.  CRIMINAL LAW—SUSPENSION OF TRIAL.—In a prosecution for rape where a juror's father was injured, and with defendant's consent the trial was suspended for two months, and the jury separated, under instructions of the court, upon reconvening the refusal of defendant's motion to discharge the jury was not error.

8.  CRIMINAL LAW—ADMISSION OF ACCUSED.—In a rape prosecution, where, during suspension of the trial, accused obtained a license to marry, evidence that he stated in his marriage affidavit that he was 21 was competent as an admission to rebut evidence that he was 18.

Appeal from Greene Circuit Court, Second Division; *R. E. L. Johnson,* Judge; affirmed.

*M. P. Huddleston,* for appellant.

*J. S. Utley,* Attorney General, *Elbert Godwin* and *Wm. T. Hammock,* for appellee.

SMITH, J.   Appellant was convicted of rape under an indictment, the charging part of which reads as follows: "In the county aforesaid, on the 24th day of November, 1921, the said Basil Brust did unlawfully, feloniously, violently, forcibly, and against her will, assault and carnally know one Irene Bobbitt, a female person under the age of sixteen years."

The insistence is that the adverbs, "unlawfully, feloniously, violently and forcibly," and the phrase, "and against her will," qualify only the word "assault," and charge only a misdemeanor, and that there are no adverbs in the indictment which qualify the verb "know" except the adverb "carnally."

We think this objection is not well taken. The charge is that the defendant did "assault" and "carnally know." The verbs "assault" and "know" are connected by the co-ordinate conjunction "and", and we think the adverbs employed limit and qualify both verbs.

It is also objected that the indictment charges two separate offenses. And so it does. But the offenses charged are rape and carnal abuse, and it is permissible to charge these offenses in a single count. *Powell* v. *State,* 149 Ark. 311, and cases there cited.

During the cross-examination of the girl assaulted she was asked about a number of incidents tending to show that she had a lascivious mind. She denied making the remarks or being guilty of the conduct inquired about. Thereafter the defendant offered to prove the specific instances of misconduct which she had denied committing. An objection to this testimony was sustained, and an exception saved. The defendant was permitted to offer testimony to the effect that the prosecutrix's reputation for truth and morality was bad.

No error was committed in the ruling just stated. The case of *Lockett* v. *State,* 136 Ark. 473, was a prosecution for an assault with intent to rape, and it was there said: "Now, it was competent, of course, to impeach the credibility of the prosecuting witness on cross-examination by interrogating her concerning particular instances of immorality on her part, but appellant was bound by her answers on that subject and could not introduce witnesses to contradict her. *McAlister* v. *State,* 99 Ark. 604." See also *Jackson* v. *State,* 92 Ark. 71; *Maxey* v. *State,* 66 Ark. 523; *Pleasant* v. *State,* 15 Ark. 624.

At a time when eleven jurors had been selected the State had two peremptory challenges left and the defendant had five. The defendant asked permission to challenge peremptorily one of the eleven jurors who had been accepted; but the request was denied. No reason was given to the court, and none appears in the record, why defendant desired to challenge the juror after hav-

ing previously accepted him. No error was committed in this ruling. In the case of *Allen* v. *State*, 70 Ark. 337, it was said: "Under the statutes of this State persons summoned as jurors, when called to serve in criminal cases, may be examined under oath touching their qualifications. As each one is called, he is first examined by the State, and then by the defendant, and, after such examination is completed, if the juror is found by the court to be competent, the State shall challenge him peremptorily or accept him; if accepted by the State, the defendant shall challenge him peremptorily or accept him. *Lackey* v. *State*, 67 Ark. 416. Each party must challenge or accept in the order named when the court declares him competent. After he is accepted by both parties, he cannot be challenged peremptorily without permission. The court, for good cause, may permit the challenge to be made at any time before the jury is completed. Sand. & H. Dig., §§ 2202-2217."

It was further said in the Allen case, *supra*, that, as the record failed to show any reason for challenging the juror after he had been selected and accepted, no error was committed in refusing to allow the defendant to challenge the juror. And, as the record now before us is in similar condition, the same rule must be applied. *Brown* v. *State*, 134 Ark. 597; *Temple* v. *State*, 126 Ark. 290.

The record shows that the court exercised its discretion to keep the jury together in charge of sworn officers from the time the jury was sworn on the 15th of December until it was discharged, as hereinafter stated, on December 17th, and that during the time the jury had been so ordered kept together, it had divided into two groups, and on more than one occasion these groups of jurors became widely separated.

It was also shown that George Taylor, a juror, left the group of which he was a member and went across the street to purchase a cigar, and that in doing so Taylor went out of the hearing of his fellow-jurors and that of the officer having the jurors in charge.

Permitting the jury to divide into two groups did not comply with the requirement that the jury should be kept together after the court had ordered that action taken. The entire jury should have been kept together; and, as this was not done, the burden then devolved on the State to show that the jury had not been subjected to any noxious influences. *Holt* v. *State,* 131 Ark. 391; *Armstrong* v. *State,* 102 Ark. 356.

We think, however, this burden was fully discharged. Every member of the jury was called and testified, not only as to communications or other improper influences during the time they were kept together, but also during the time they were permitted to separate, as hereinafter stated, and each juror testified that no one had attempted to communicate to him or with him anything concerning the case on trial. The affirmative showing was made that, while the jury did separate into two groups, a sworn officer accompanied each group and kept the members thereof together and suffered no person to speak to or communicate with them on any subject connected with the trial; nor did they do so themselves. Section 3187, C. & M. Digest.

As to the juror Taylor, the affirmative showing was made that he was away from his fellow-jurors only the length of time required to cross the street and buy a cigar, and during that time he was in the view of the officer having him in charge and that of his fellow-jurors. He himself testified that no one mentioned the case in his presence or hearing while he was away from the group of jurors of which he was a member.

Error is assigned because of the refusal of the court to grant a new trial on account of alleged false answers given by a juror on his *voir dire* as to whether he had ever been interested in the trial of any "sex crime." The juror answered, on his *voir dire,* that he had not. We do not set out the examination of this juror conducted before the court on the hearing of the motion for a new trial; but we do not think it was made to appear that he had answered either falsely or evasively the questions

which had been asked him touching his qualifications to
serve as a juror.

Before the taking of the testimony had been com-
pleted, the father of one of the jurors was shot and was
brought to a hospital in the city of Paragould, where the
court was in session. The attending surgeon was of the
opinion that the patient would die, and the juror was ad-
vised of his father's condition. Thereupon defendant
filed a motion to discharge the jury. This motion was
overruled, but by consent it was agreed that the trial
should be suspended and continued over until the 23rd
of January, 1922, with the stipulation that during the
interval the jury should be allowed to separate under
strict instructions about receiving communications con-
cerning the trial. This order of continuance recites that
it was entered by consent of all parties, and that in con-
sideration thereof it was agreed that, in the event the
defendant was found guilty, the death penalty would be
waived and the punishment should be fixed at imprison-
ment in the penitentiary for life, and the instructions,
without reciting this agreement, told the jury the death
penalty had been waived. During this suspension of the
trial courts were held in other counties in the circuit.
Upon the reconvening of the court the defendant filed a
motion to discharge the jury. He insists that this should
have been done, notwithstanding the fact that he had
consented to the postponement of the trial and to the
separation of the jury in the meantime. He insists that
he should not be bound by his consent, because, to have
done otherwise, would have incurred the displeasure of
the jury, and especially would this have been the case
had the jury been kept together during the period of
adjournment. The further insistence is made that the
protracted adjournment destroyed the integrity of the
trial.

The holding of the court in the case of *McVay* v.
*State,* 104 Ark. 629, is against the contention just stated.
That case is not substantially different from the instant
case, except that in the case now before us the period of

adjournment was for a somewhat longer time than was the adjournment in the McVay case. It is also true that the jury in the McVay case was kept together; while the jury in the instant case was allowed to separate; but in the opinion in the McVay case it was said: "The court could, in the exercise of its discretion, have permitted the jury to separate during the period of adjournment (Kirby's Digest, § 2390), and the fact that the court ordered the jury to be kept together did not affect its power to retain the jury during the period of adjournment."

It does not appear that the adjournment over in the McVay case, *supra*, was done by the consent of the defendant; while here express consent to that action was given; and we are of opinion no error was committed in so doing, even though the jury was allowed to separate and the adjournment was for a longer period of time than that in the McVay case. *Shinn* v. *State*, 150 Ark. 215.

During the period of adjournment the defendant was by consent admitted to bail; and while thus at liberty he obtained a license to marry a young lady not connected with the trial. The clerk of the county court was called and, over defendant's objection, was permitted to testify that when defendant applied for the license he made affidavit that he was then twenty-one years old. In admitting this testimony the court said: "It is not in the matter of considering whether the defendant did or did not commit perjury in making the affidavit before the clerk, or swear to an age which has formerly been maintained. Don't consider it from that point at all." The defendant did not testify, and it is very strenuously urged that the admission of this testimony was error calling for the reversal of the judgment.

It appears, however, that defendant's mother did testify in behalf of her son, and on her direct examination was asked defendant's age, and she stated that he was then eighteen years of age. This testimony was offered as substantive matter of defense, the theory being, no doubt, that the jury would not likely believe that a youth

of that age would be so amorously crazy as to commit the crime of rape; or it may have been offered to excite the sympathy of the jury on account of the youth of the accused; and it was not, therefore, improper to prove the affidavit of the defendant in obtaining the marriage license as a contradiction of the testimony of his mother and an admission by him that he had in fact attained a more advanced age than she had stated. This was not impeaching testimony, strictly speaking. The defendant saw proper to offer testimony that he was only eighteen years old; and the State met this testimony by proving his own admission that he was older. His declarations were, of course, admissible against him. He had stated to the clerk that he was twenty-one years old; at least the clerk so testified; and if it was proper for the jury to consider the age of the accused in making up their verdict, it was not improper to take into account defendant's own statement on that subject.

The girl assaulted testified unequivocally that the crime was committed forcibly and against her will; and there appears to be no error in the record, so the judgment must be affirmed. It is so ordered.