SIRMON v. ROBERTS.

4-7800                                    191 S. W. 2d 824

Opinion delivered January 14, 1946.

*Boyd Tackett,* for appellant.

*Geo. E. Steel,* for appellee.

GRIFFIN SMITH, Chief Justice. The motion for mandamus, denied below, is based upon Act 319 of 1941, as amended by Act 136 of 1943.

Athens School District No. 10 of Howard County employed Mrs. Farris Sirmon to teach the term ending February 23, 1945. Approximately three weeks before expiration of the 1944-'45 period for which Mrs. Sirmon had been expressly retained, the District contracted with Mrs. Travis Strasner for the succeeding term. T. W. Roberts, Ben Mullen, and J. Y. Harris, as directors, were made defendants in the action brought by Mrs. Sirmon August 2, 1945. It was alleged that the District had arbitrarily refused to make written renewal of Mrs. Sirmon's contract. The applicable statute is copied in the margin.[1]

[1] Every contract of employment hereafter made between a teacher and a board of school directors shall be renewed in writing on the same terms and for the same salary, unless increased or decreased under the provisions of the law, for the school year next succeeding the date of termination fixed therein; unless within ten days after the date of the termination of said school term, the teacher shall be notified by the school board in writing delivered in person or mailed to him or her at last and usual known address by registered mail that such contract will not be renewed for such succeeding year, or unless the teacher

We think the case turns on answer to the question, Did Mrs. Sirmon sustain her allegation that the contract made in 1944 had not been superseded?

Appellant's attorney, in objecting to certain testimony, stated the issues to be: (a) whether [timely] written notice was given Mrs. Sirmon that her services would not be required; (b) whether Mrs. Sirmon gave written notice of her resignation, and (c) whether she was re-ëmployed by another contract.

It is agreed that written notice was not given by either side. The Court, in effect, found that Mrs. Sirmon either consented to abrogation of the contract or in fact resigned. The District employs but one teacher, and funds are available for one only.

While there is considerable incompetent testimony in the record, evidence properly admitted shows' that the directors, as a board, met from time to time with some present and others absent; and that these meetings were often informal. But the issues here raised do not relate to the manner in which board meetings were held. When we determine whether the Court erred in its conclusion that Mrs. Sirmon did not have a right to require manual execution and delivery of a renewal contract, other matters become secondary.

A majority of the directors testified that Mrs. Sirmon had stated that if the board did not want her to teach during the ensuing term she did not want to do so, and that she expected to go to Washington, D. C., and remain there. She did go to Washington, but returned.

Mullen was emphatic in his assertion that Mrs. Sirmon wanted him to discuss with other members of the board the suggestion that an extra month be taught in the Spring of 1945. After Mullen had talked with associate members Mrs. Sirmon returned; and (quoting Mullen): "We agreed to let her finish that month—it wasn't quite out—and hire a new teacher. Question: Did you

within ten days after close of school shall deliver or mail by registered mail to such school board his or her written resignation as such teacher, or unless such contract is superseded by another contract between the parties. . . ." Act 136 of 1943, § 4 (b).

tell her that? A. She came up to my house and wanted to know what I had done about it. I told her we agreed to let her finish out that [extra] month and we were going to hire a new teacher. Q. What did she say? A. She said, 'All right, hire a new teacher; but I am going to quit. I will never teach another school in Athens: I am going to Washington.' "

One obvious purpose of the statute requiring written notice was elimination of uncertainty and possible controversy regarding the future status of a teacher and a school. The General Assembly did not intend to cast upon a teacher the burden of proving by ordinary methods that notice had been given. Upon the other hand, the District was afforded the same accommodation. But, while conduct amounting to waiver should be carefully inspected and all evidence bearing upon the subject ought to be impartially scrutinized, there is nothing to prevent a competent person from agreeing to forego designated rights; and this is true whether such rights are conferred by law or by contract. See Bowers on The Law of Waiver, p. 19; Corpus Juris, v. 67, pages 290-291. A definition of "waiver" found in the Corpus Juris citation is ". . . the voluntary abandonment or surrender, by a capable person, of a right known by him to exist, with the intent that such right shall be surrendered and such person forever deprived of its benefits; or such conduct as warrants an inference of the relinquishment of such right, or the intentional doing of an act inconsistent with claiming it. Thus, 'waiver' occurs where one in possession of a right, whether conferred by law or contract, with full knowledge of the material facts, does or forbears to do something, the doing of which or the failure or forbearance to do which is inconsistent with the right or his intention to rely upon it."

Chief Justice CORNISH of the Supreme Court of Maine (*Kallock* v. *Elward,* 118 Me. 346, 108 Atl. 256, 8 A. L. R. 750) said that "A statute cannot stand in the way of waiver or equitable estoppel when the facts demand their application in the interest of justice."

The distinction between waiver and estoppel is discussed by Mr. Justice Wood in his opinion on rehearing in *Sovereign Camp, Woodmen of the World, v. Newsom,* 142 Ark. 132, at pages 156-7-8, 219 S. W. 759, 14 A. L. R. 903.

Although there is some difference between testimony given by Mrs. Sirmon and members of the board, disparity in effect is but slight. Mrs. Sirmon was asked (in connection with transactions that occurred just before the school term ended): ''Didn't you tell Mr. Mullen at that time that it was your understanding that another teacher would be used, and you didn't want the school and wouldn't have it? A. I said, 'If the school board doesn't want me, I don't want it.' ''

On redirect examination Mrs. Sirmon was asked whether she had told Mullen she didn't want the school. Her reply was: 'The only thing I told Mr. Mullen was that if Parker and the board didn't want me, I didn't want the place.'' On cross-examination the question was asked: ''Mrs. Sirmon, isn't it a fact you told the children *who* was going to teach this year?. A. They asked me a time or two who was going to teach, but I didn't know.''

Mrs. Sirmon at least knew she had not given notice in writing, and that the board had not. Her conversations, then, must have had reference to the position she had taken when talking with Mullen: that is, if the board didn't want her she didn't want the school. If she had intended to claim the rights now contended for under the 1944-'45 contract, Mrs. Sirmon would have known who would teach the school. She was familiar with the law on the subject of employment and fully understood that the old agreement was automatically continued unless timely notice were given; hence, any reasonable construction of what she said to Mullen, and what she authorized him to say to other board members, is that if her services were not wanted she was willing to yield any rights that might attach. This amounted to a waiver of notice and terminated the relationship.

Appellee urges that mandamus was not an appropriate remedy, inasmuch as the contract, unless waived,

continued in effect as a matter of law, and its terms were known to all of the parties and copies of the contract were available to them. Conceding that in the absence of estoppel or waiver the contract continued, it is not necessary here to pass upon the form of action other than to say that the Court had jurisdiction of the parties and subject-matter, and had before it all necessary proof to decide whether Mrs. Sirmon waived her rights; and it was not error to dispose of the case by entering an order denying the writ.

Affirmed.

Mr. Justice MILLWEE did not participate in the consideration or determination of this case.