Charles H. LUNCE and John R. Reynolds, Petitioners-Appellants,

v.

J. Ellis OVERLADE, Warden of the Indiana State Prison, Respondent-Appellee.

No. 11931.

United States Court of Appeals Seventh Circuit.

May 3, 1957.

Robert S. Baker, Public Defender, Rushville, Ind., for appellant.

Robert M. O'Mahoney, Indianapolis, Ind., Edwin K. Steers, Atty. Gen. of Indiana, for appellee.

Before FINNEGAN, SWAIM and SCHNACKENBERG, Circuit Judges.

SWAIM, Circuit Judge.

Petitioners, Charles H. Lunce and John R. Reynolds, have appealed from the dismissal by the District Court of their petition for a writ of habeas corpus.

On July 18, 1956, petitioners, state prisoners, applied to the United States District Court for the Northern District of Indiana, South Bend Division, for habeas corpus after the Supreme Court of the United States had denied their petition for certiorari, Lunce v. Indiana, 349 U.S. 960, 75 S.Ct. 890, 99 L.Ed. 1283, to review the Indiana Supreme Court's affirmance of their conviction for the crime of robbery. Lunce v. State, 233 Ind. 685, 122 N.E.2d 5. Petitioners' sole claim for relief is that they were denied due process of law because of the incompetence of the lawyer who conducted the trial on their behalf in the state court. The District Court, on the motion of the respondent, dismissed the petition for habeas corpus on the grounds that "petitioners were represented by counsel of their own choice and the same questions raised by the petitioners in this proceeding were raised * * * on their appeal to the Supreme Court of Indiana, whereby the state process has given fair consideration to the issues * * *."

Since the petition for habeas corpus was dismissed without requiring the respondent to answer and without a hearing, we must assume that the petitioners' allegations are true. Petitioners, together with one John M. Thompson, were arrested on August 19, 1952, and were taken to Versailles, Indiana, where they were confined in the Ripley County jail pending the filing of formal charges against them. On August 20, 1952, an affidavit was filed in the Ripley Circuit Court charging each of them with the crime of assault and battery with intent to commit robbery. From the time of their confinement on August 19, 1952, until they were arraigned on September 8, 1952, they were denied opportunity to obtain counsel and were not afforded opportunity to secure their release by bail. They were citizens of the State of Ohio and without funds or friends in a strange community.

On September 8, 1952, they were taken before the presiding judge of the Ripley Circuit Court for arraignment. Without being advised of their right to the assistance of counsel they were required to enter their pleas to the crime with which they were charged. Each of them pleaded "not guilty" and thereafter the trial judge advised them of their right to counsel. Upon the execution of affidavits of paupership, the trial judge appointed local counsel to jointly represent petitioners. The extent of his services consisted of his reading to petitioners the section of the criminal code under which they were charged. From this petitioners understood that if convicted they could be imprisoned for life. Counsel advised them that if they pleaded guilty he could probably get lesser sentences. Petitioners protested their innocence, but were informed by counsel that unless they pleaded guilty there was nothing he could or would do for them. Counsel further informed petitioners that although he was obligated to appear in court as their attorney for trial, he had no intention of pursuing their interests any further.

On November 17, 1952, petitioners, together with John M. Thompson, appeared in the Ripley Circuit Court for trial. Petitioners' court appointed counsel was not present nor did he appear at any time during their trial. The family of John M. Thompson had retained for his defense an Ohio attorney who secured the dismissal of the charges against Thompson because of insufficient evidence, and accordingly Thompson was discharged.

When it became apparent that the trial judge intended to proceed with the trial of petitioners notwithstanding the absence of their court appointed counsel, the Ohio attorney volunteered his services and undertook the defense of petitioners gratuitously. Ohio counsel, who was not admitted to practice before the courts of Indiana and who was apparently wholly unversed in Indiana law and

practice, proceeded, without any preparation, to conduct petitioners' defense. The jury found petitioners guilty as charged and each was sentenced to a term of not less than ten nor more than twenty-five years. Ohio counsel attempted to prosecute an appeal, but because of his ignorance of Indiana appellate procedure he failed to perfect the appeal and finally gave up. Whereupon the Indiana Supreme Court in order to safeguard petitioners' rights directed the Public Defender to perfect petitioners' appeal. The only question presented to that court was whether due process of law was denied petitioners because they were represented by incompetent counsel. The convictions were affirmed, two judges dissenting, Lunce v. State, 233 Ind. 685, 122 N.E.2d 5.

The record made by Ohio counsel in his defense of petitioners irrefutably demonstrates that he was so ignorant of Indiana law and procedure that it was virtually impossible for him to protect or even to assert petitioners' rights. Without attempting to be exhaustive, Ohio counsel did not challenge the sufficiency of the affidavit which does not appear to have charged the crime for which petitioners were tried and convicted; he permitted incompetent, damaging hearsay evidence to be introduced against petitioners; he flagrantly failed to request instructions on intoxication; many of the instructions given to the jury were highly questionable and incomplete, yet he voiced no objections; he failed to save his exceptions; and most of what he did do was ineffective as not complying with Indiana law. A full account of the record he made and failed to make is found in the dissenting opinion of Judge Emmert, 233 Ind. 685, 686, 122 N.E.2d 5, 6.

■■ The District Court in the instant case apparently disposed of petitioners' claim on the ground that petitioners accepted Ohio counsel's services and elected to go to trial with him as their attorney. Assuming that petitioners did in fact have a choice in this matter—a choice of going to trial without counsel or accepting the services of the Ohio attorney, we nevertheless believe that petitioners' allegations, if established, would support a finding that petitioners' defense was so inadequate and incompetent that they were deprived of their liberty in violation of their rights under the Fourteenth Amendment. As a rule, an accused cannot proceed to trial with counsel of his own choice and then later claim a denial of due process chargeable to the state because of errors committed by such counsel. See United States ex rel. Darcy v. Handy, 3 Cir., 203 F.2d 407, certiorari denied sub nom. Maroney v. United States ex rel. Darcy, 346 U.S. 865, 74 S.Ct. 103, 98 L.Ed. 375, and cases cited therein. However, where the representation of an accused by his counsel is so lacking in diligence and competence that the accused is without representation and the trial is reduced to a sham, it is the duty of the state to see that the essential rights of the accused are preserved by appropriate intervention. United States ex rel. Darcy v. Handy, supra; United States ex rel. Feeley v. Ragen, 7 Cir., 166 F.2d 976. In the instant case the incompetence of the defense was so apparent as to call for intervention by the officers of the state but nothing was done. We need not consider whether the state would have been required to appoint counsel for petitioners on the facts alleged, for our concern here is the state's deprivation of petitioners' rights under the Fourteenth Amendment by denying them that fundamental fairness without which no conviction can stand.

This court in United States ex rel. Feeley v. Ragen, supra, at 981, said:

"Petitions challenging the competency of counsel, especially years after the conviction, must clearly allege such a factual situation which if established by competent evidence would show the representation of counsel was such as to reduce the trial to a farce or a sham. Otherwise, they should be dismissed."

We believe that petitioners' allegations set forth a *prima facie* violation of federal constitutional rights, and since

 

there has been no determination, either by a review of the trial record or by a hearing of evidence, as to whether petitioners, in fact, are imprisoned in violation of their constitutional rights, the order of the District Court must be reversed and the cause remanded for further proceedings in conformity with this opinion.

■ We have reached our decision herein with great reluctance as we are in accord with those who desire to preserve state court judgments from disturbance by the federal courts. However, we may not permit this salutary principle to preclude review by way of federal habeas corpus of important federal questions raised by persons held in state custody. In our federal system there has always been some federal forum available for the review of such questions when raised by one in state custody, and for individuals in petitioners' circumstances federal habeas corpus is a necessary and appropriate remedy.

■■ A difficult problem arises when, as may be the case here, if petitioners prove their allegations on the remand, a federal court in a habeas corpus proceeding reaches a different conclusion on a given set of facts from that previously reached by a state court. This problem is the effect to be accorded the state action. We think the instant case presents a situation where the federal judge cannot accept without more the result reached by the state court. We have in mind the distinction drawn by Justice Frankfurter in Brown v. Allen, 344 U.S. 443, 506–508, 73 S.Ct. 397, 446, 97 L.Ed. 469, between cases in which the issue turns upon "basic facts" and those where the issue turns upon "interpretation of the legal significance of such facts." In this latter situation the "District Judge must exercise his own judgment on [the] blend of facts and their legal values." 344 U.S. at page 507, 73 S.Ct. at page 446. Thus, in the instant case, the ascertainment of the historical facts does not dispose of petitioners' claim but calls for the interpretation of the legal significance of such facts. See Application of Burwell, 9 Cir., 236 F.2d 770, 773–774; Cranor v. Gonzales, 9 Cir., 226 F.2d 83, 87–89, certiorari denied 350 U.S. 935, 76 S.Ct. 307, 100 L.Ed. 183; Boyden v. Webb, 9 Cir., 208 F.2d 201, 204; Johns v. Overlade, D.C.N.D.Ind., 122 F.Supp. 921. As was said by Justice Frankfurter in Brown v. Allen, 344 U.S. at page 508, 73 S.Ct. at page 447, "The State court cannot have the last say when it, though on fair consideration and what procedurally may be deemed fairness, may have misconceived a federal constitutional right." In the instant case the federal judge may look to the state proceeding for such light as it may shed on the historical facts, but it is for the federal judge to assess on the basis of such facts the fundamental fairness of petitioners' conviction with such counsel as they had. If petitioners establish by adequate and competent proof the pertinent allegations contained in their petition for habeas corpus we think they will have shown that their conviction was so lacking in fundamental fairness that it cannot be sustained.

Reversed and remanded.