Elmer Eugene FRANKLIN and Loyd Allen
REID *v.* STATE of Arkansas

5625                                          471 S.W. 2d 760

Opinion delivered October 25, 1971

*Leonard C. Smead* and *Julian D. Streett,* for appellants.

*Ray Thornton,* Attorney General; *Gene O. Daniel,* Asst. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. Appellants filed their petition for postconviction relief from the maximum

sentence for burglary of the Bank of Chidester imposed by a jury on September 11, 1969. The only ground that merits any real consideration is their contention that they were deprived of the effective assistance of counsel in violation of their constitutional rights under the Sixth and Fourteenth Amendments to the United States Constitution. They alleged that during the trial William I. Purifoy, their employed counsel, was intoxicated, that he had a wine bottle in his back pocket in full view in the courtroom, and that he left the courtroom three times during the course of the trial.

The record discloses that direct evidence against appellants on the charge was overwhelming. It also discloses that the prosecuting attorney would not agree to imposition of any sentence less than the maximum. It appears obvious to us that the real purpose of the trial was to determine the punishment to be imposed and that appellants hoped to escape the maximum punishment.

There was testimony by jurors at the hearing on appellants' petition that clearly indicated that appellants' attorney was intoxicated and had a bottle in his pocket. Several of them observed his condition and stated that the lawyer was somewhat incoherent, and his hair and clothing disheveled, was unexplainedly absent from the courtroom on several occasions while the trial was in progress, and that he often could not be either heard or understood when he talked. The jury foreman described his conduct as highly irregular for a courtroom. Another juror said that he actually considered getting up and leaving the courtroom, because he did not feel that a jury should be required to sit on a case where the defendants' attorney appeared, because of intoxication, to be in no state of mind to be handling a case in court. The jurors differed as to the effect on them of this attorney's conduct, but at least some of them indicated that their verdict, either as to guilt or sentence, or both, was influenced by it.

A trooper of the Arkansas State Police to whom the attorney offered a drink from a bottle of wine during a recess before taking one himself observed the attorney

during the trial. His conduct in the courtroom led the officer to the opinion that this lawyer was under the influence of intoxicants to a certain degree, but not as drunk as the officer had seen him on the streets on other occasions. The prosecuting attorney also testified that he thought that the jury might have been persuaded to give a little less sentence by a "good lawyer," adding that he had seen this attorney perform as a much better criminal lawyer than he was at this trial.

During a recess in the trial, one Bill Horton, a relative of one of the appellants, approached the circuit judge questioning whether appellants were getting a fair trial and calling the judge's attention to the fact that their lawyer was drinking and had a one-half pint bottle of wine in his pocket. The prosecuting attorney, either at this recess or another, reported to the judge that appellants' attorney had a bottle in his hip pocket. This official testified that the attorney was under the influence of alcohol, that he left the courtroom on a few occasions, and that Horton's conference with the judge was arranged by this witness after Horton had interceded with him in an effort to have a mistrial declared.

According to the judge, he then observed appellants' attorney and his demeanor more closely during the remainder of the trial. At the conclusion of the state's evidence, appellants' attorney announced that they also rested. The circuit judge then held a hearing in the absence of the jury, and, apparently, without the presence of appellants' attorney. After advising appellants that the fairness of their trial had been questioned on the basis of their attorney's condition, he reminded them that, when arraigned some months earlier, they were informed of their right to jury trial, to remain silent and to be represented by counsel, who would be appointed by the court, if they were indigent. He also called to their attention that the court had appointed one of the attorneys by whom they are presently represented, but that they had declined his services and employed the attorney who appeared at the trial. The judge then interrogated each of appellants as to whether he felt that he was properly and adequately represented in court on

that day. When each replied in the affirmative, the judge remarked that there was nothing that he could do, that the matter was brought to their attention in accordance with the dictates of good justice to both them, and the state, but if they were satisfied with their attorney's services, he had nothing more to say. The prosecuting attorney testified that he had advised the judge that the state would not object to either the declaration of a mistrial or proceeding with the trial. He also said that he thought the court had no choice in the matter if the appellants elected to proceed with their attorney.

After the extensive hearing on the postconviction motion, the circuit judge found that the evidence was clear that appellants' employed counsel appeared at the trial in a shabby condition and under the influence of intoxicants to some degree, to the disgrace of his profession and bar and to the degradation of our system of justice. The judge again concluded that, in view of the expressions of satisfaction by appellants, there was nothing more that he could have done.

There can no longer be any doubt that Amendment 6 to the United States Constitution requires that a defendant in a state trial have the effective assistance of counsel. See *Powell* v. *Alabama*, 287 U. S. 45, 53 S. Ct. 55, 77 L. Ed. 158 (1932); *Gideon* v. *Wainwright*, 372 U. S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799, 93 A. L. R. 2d 733 (1963); *Mitchell* v. *Stephens*, 353 F. 2d 129 (8th Cir. 1965), cert. denied, 384 U. S. 1019, 16 L. Ed. 2d 1042, 86 S. Ct. 1966 (1966). See also, *Reece* v. *State*, 350 U. S. 85, 76 S. Ct. 167, 100 L. Ed. 77 (1955). Effectiveness of counsel is not to be measured by the success reflected in the results of the trial. *Mitchell* v. *Stephens*, supra; *Peyton* v. *Ellyson*, 207 Va. 423, 150 S. E. 2d 104 (1966). As pointed out in *Mitchell*, retrospective evaluation of effectiveness of counsel is usually difficult for an appellate court, because so much depends upon judgment and the factors which influence judgment at the moment.

Normally, the state is absolved of any responsibility to see that a defendant's counsel is competent and effective after appearance of privately retained non-ap-

pointed counsel. *United States* v. *Maroney,* 423 F. 2d 865 (3rd Cir. 1970); *Lunce* v. *Overlade,* 244 F. 2d 108, 74 A. L. R. 2d 1384 (7th Cir. 1957); *United States* v. *Handy,* 203 F. 2d 407 (3rd Cir. 1953), cert. denied, 338 U. S. 862, 94 L. Ed. 528, 70 S. Ct. 96 (1949), 342 U. S. 837, 96 L. Ed. 632, 72 S. Ct. 61 (1951), 346 U. S. 865, 98 L. Ed. 375, 74 S. Ct. 103 (1953), aff'd, 351 U. S. 454, 100 L. Ed. 1331, 76 S. Ct. 965 (1956); *United States* v. *Ragen,* 166 F. 2d 976 (7th Cir. 1948). Yet, when the professional conduct of non-appointed counsel is so lacking in competence or good faith that it shocks the conscience of the court or prosecutors, and the trial is reduced to a sham, farce or mockery of justice, permitting the proceedings to continue will constitute a denial of due process. *United States* v. *Maroney,* supra; *Wilson* v. *Phend,* 417 F. 2d 1197 (7th Cir. 1969); *United States* v. *Ragen,* supra. See also, *Cardarella* v. *United States,* 375 F. 2d 222 (8th Cir. 1967); *Cross* v. *United States,* 392 F. 2d 360 (8th Cir. 1968); *Commonwealth* v. *Maroney,* 427 Pa. 599, 235 A. 2d 349 (1967); *Peyton* v. *Ellyson,* supra.[1] It then becomes the duty of the state to intervene to see that the essential rights of the accused are preserved. *Lunce* v. *Overlade,* supra; *State* v. *Keller,* 57 N. D. 645, 223 N. W. 698, 64 A. L. R. 434 (1929); *United States* v. *Handy,* supra. It has been said that the constitutional right to counsel invokes the protection of the trial court. *Johnson* v. *Zerbst,* 304 U. S. 458, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938).

In this case, evaluation of the effectiveness of appellants' trial counsel presents no difficulty. The record is clear that both the judge and the prosecutor were shocked by this attorney's condition. The postconviction finding by the circuit judge, who was also the trial judge, that this attorney was in such condition that he was a disgrace to the legal profession and degrading to our system of justice is tantamount to a finding that he was so incompetent, on that occasion, that the trial was reduced to a mockery of justice. The judge, after strict surveillance of the lawyer's demeanor, felt compelled to

[1]There is at least an implication in *Barnhill* v. *State,* 247 Ark. 268, 444 S. W. 2d 97, that an accused would be entitled to postconviction relief in such circumstances.

take some action, before submitting the case to the jury. Appellants are clearly entitled to relief if their acquiescence in continuing the trial did not constitute a waiver of their right to effective assistance of their counsel.

It is to be remembered that at this point the instructions to be given the jury had not been settled, and arguments of counsel would soon begin. Obviously, there was a serious question in the minds of both the prosecuting attorney and the judge as to the fairness of the trial up to this point. After the showing made on behalf of appellants, in the present proceeding, the burden rested upon the state to show that there was a knowing, intelligent waiver by appellants, based upon adequate warning as to their rights. *Jackson* v. *State,* 249 Ark. 653 (1970), 460 S. W. 2d 319. The determination whether there was such a waiver depends upon the particular facts and circumstances of the case, including the background, experience and conduct of the accused. *Jackson* v. *State,* supra. Every reasonable presumption must be indulged against the waiver of fundamental constitutional rights. *Glasser* v. *United States,* 315 U. S. 60, 62 S. Ct. 457, 86 L. Ed. 680 (1942), reh. denied, 315 U. S. 827, 62 S. Ct. 629, 86 L. Ed. 1222 (1942.

We have previously outlined the essential requisites of a waiver in adopting and applying its definition found in Corpus Juris. It is: "*** the voluntary abandonment or surrender, by a capable person, of a right known by him to exist, with the intent that such right shall be surrendered and such person forever deprived of its benefits; or such conduct as warrants an inference of the relinquishment of such right, or the intentional doing of an act inconsistent with claiming it. Thus, 'waiver' occurs where one in possession of a right, whether conferred by law or contract, with full knowledge of the material facts, does or forbears to do something, the doing of which or the failure or forbearance to do which is inconsistent with the right or his intention to rely upon it." *Sirmon* v. *Roberts,* 209 Ark. 586, 191 S. W. 2d 824. We do not feel that it can be said that the ac-

quiescence of appellants in their continued representation by their retained counsel in this case constituted a waiver. The facts are undisputed, so the question whether there was a waiver is one of law.

We find the evidence insufficient to sustain a finding of waiver as a matter of law. Before we could sustain such a finding, we would have to be able to say that the waiver was knowingly and intelligently made. *Jackson* v. *State,* supra. While the record indicates clearly the trial judge thoroughly explained to appellants their right to counsel at their arraignment, there is no indication of any explanation of their rights in the eventuality that was presented during the trial. The only inquiry that was made of appellants was whether they felt that they were properly and adequately represented. There is no indication that they were made aware of any alternative to continuing the trial with that representation.

We do not take the trial judge's remark that there was nothing he could do to mean that he could not have done otherwise in the absence of appellants' affirmative responses to the particular inquiry addressed to them separately. That there were alternatives is beyond doubt. In the first place, it is certain that, with the consent or acquiescence of appellants, a mistrial would have been in order. *Franklin* v. *State,* 149 Ark. 546, 233 S.W. 688. It also may be proper for the court to declare a mistrial whenever a necessity in the administration of justice arises during the trial demanding action upon the part of the court to safeguard rights of a defendant in a criminal case, even though the defendant declines to object to that which might be prejudicial to him. *Martin* v. *State,* 161 Ark. 423, 256 S. W. 367. A plea of double jeopardy would be unavailing in either event. *Martin* v. *State,* supra; *Franklin* v. *State,* supra. While we have said that the necessity must be an "overruling" one,[2] this case presents just such a situation. The requisite necessity exists whenever it is manifest that the jury must be discharged before rendering a verdict in

[2]See *Cody* v. *State,* 237 Ark. 15, 371 S. W. 2d 143; *Jones* v. *State,* 230 Ark. 18, 320 S. W. 2d 645.

order to prevent the ends of justice from being defeated. *Martin* v. *State,* 163 Ark. 103, 259 S. W. 6. In the case just cited it was pointed out that a contrary holding would require a court to proceed with a trial that the presiding judge knows is not a trial at all, realizing that a conviction could not be permitted to stand. We think that a mistrial would have been in order and that appellants could not have claimed double jeopardy on retrial. But in the present situation, appellants were not advised of this alternative to proceeding with intoxicated counsel.

Another alternative, if appellants' cause was not already irreparably damaged, would have been a suspension of the trial for a reasonable time to permit counsel to be restored to a condition in which he could properly represent his clients in further steps in the course of the trial. This procedure has been held to be proper in other jurisdictions in parallel situations. *O'Brien* v. *Commonwealth,* 115 Ky. 608, 74 S. W. 666 (1903); *Territory* v. *Clark,* 13 N. M. 59, 79 P. 708 (1905). See also, *State* v. *Keller,* 57 N. D. 645, 233 N. W. 698, 64 A. L. R. 434 (1929). While we have not been presented with the exact situation heretofore, this procedure has been approved in cases when dictated by the exigencies of the situation, either with or without the consent of the accused. *Brust* v. *State,* 153 Ark. 348, 240 S. W. 1079; *McVay* v. *State,* 104 Ark. 629, 150 S. W. 125. This possibility was not made known to appellants.

In a proper case, prejudice to a defendant might be avoided by the substitution of other counsel. See *State* v. *Keller,* supra. The court's advice to appellants on their arraignment cannot be taken to have made them aware of this possibility when their retained counsel became intoxicated either during or on the eve of the trial.

We are unable to say that there is evidence that appellants knowingly and intelligently waived their right to effective assistance of counsel. In order to say that there was a waiver, it must appear that appellants had full knowledge of their rights and intended to relinquish them. *Sirmon* v. *Roberts,* supra; *People* v. *Abetti,* 152

N. Y. S. 890 (1914). One cannot be said to have waived that of which he had no knowledge. *Carr* v. *State,* 65 Okla. Cr. 201, 84 P. 2d 42 (1938). We cannot say that appellants had adequate knowledge upon which to base a waiver in this case.

It has been suggested that appellants were not prejudiced. The right to counsel has been said to be too fundamental and absolute to permit indulgence in nice calculations as to the extent of prejudice arising from its denial. *Glasser* v. *United States,* 315 U. S. 60, 62 S. Ct. 457, 86 L. Ed. 680 (1942); *Cross* v. *United States,* 392 F. 2d 360 (8th Cir. 1968). The fact that appellants received the maximum punishment at the hands of the jury enables us to avoid speculation as to the prejudicial effect of their attorney's conduct and condition, particularly when viewed in the light of the testimony of the jurors and the prosecuting attorney.

Granting a new trial to those against whom evidence of guilt is as overwhelming as it is in this case is always an unpleasant duty. Yet, one of the basic precepts upon which our system was founded is that even the worst criminal is entitled to his day in court on which he may be heard by counsel. He cannot be effectively heard through one so drunk that his speech cannot be heard or, at best, is incoherent. Clear constitutional rights must be protected for the benefit of all of us, even though it may result in some case that some guilty person may escape punishment. That eventuality seems slight in this case, where it appears that appellants were caught "red-handed."

Appellants also contend that they should be relieved of the consequences of their pleas of guilty to other charges after their trial had been concluded. We do not agree. The record discloses that appellants advised the prosecuting attorney of their desire to change their pleas in these other cases. The circuit judge then recalled to appellants his instructions to them when they were arraigned on these charges as to the nature, elements and penalties relating to these offenses, the presumption of their innocence, right to trial by impartial jury, rights

as to self-incrimination, right to counsel, and, if indigent, to appointment of counsel, and the previous appointment of counsel for them. One of the appellants answered clearly stated inquiries by saying that he had no attorney in these cases, that he did not desire to employ one or to have one appointed for him, and that his pleas of guilty were voluntary, and without coercion, threat, promise, abuse or enticement from any person, and without being influenced by his incarceration. The other answered similar inquiries in the same way, except that he had an attorney but did not care to have him present and that he was refusing the assistance of counsel, even though he was mindful of the fact that he could have one appointed by the court if he desired. These appellants clearly waived their right to counsel in these cases. *Burch* v. *United States,* 359 F. 2d 69 (8th Cir. 1966).

The contention that being put to trial on information filed by the prosecuting attorney rather than by indictment violated constitutional rights merits no discussion. *Cassady* v. *State,* 249 Ark. 1040 (1971), 463 S. W. 2d 96.

The conviction of appellants of the burglary of the Bank of Chidester is set aside and the case remanded for a new trial. In all other respects the judgment denying postconviction relief is affirmed.

GEORGE ROSE SMITH, JONES and BYRD, JJ., dissent.

CONLEY BYRD, Justice, dissenting. The facts in this case remind me of the old adage that you can lead a horse to water but you can't make him drink. In this instance both the prosecuting attorney and the trial judge did their best to see that petitioners were adequately represented by capable counsel but the petitioners steadfastly clung to their alcoholic lawyer.

During the trial after both the State and defense had rested, the trial court out of the presence of the jury conducted the following proceeding:

"THE COURT: For the purpose of the record, the State has completed its case in chief, and the

defendant elected not to put any evidence on the stand, and at declaring a recess, one Mr. Bill Horton approached this bench for the purpose of questioning whether or not in his mind the defendants were receiving a fair and impartial trial due to the representation of the defendants by one Mr. William I. Purifoy, an attorney of Camden, Arkansas. He further related to me that the attorney was drinking at the time and had in his pocket a half-pint bottle of wine. With that in mind, I am not familiar with the procedure that has been outlined to the defendants, but the record reflects that on July 14, 1969, each of you and the defendants now appearing at the bar, were arraigned, at which time you were informed of the nature of the offense against you, the penalties of the offense, the presumption of innocence, and the right to trial by a fair and impartial jury, and your rights of self-incrimination, that is, you do not have to make any statements to any persons whatsoever. You had a constitutional right to remain silent, that further, any statement that you might give could be used against you in the trial of the case, and you had a right to counsel at the time this case became directory or accusatory towards you, or more clearly, at the time of your arrest. Further, that you had a right to an appointment of an attorney by this Court if you were indigent defendants. At that time the Court appointed Mr. Leonard Smead to represent you, and I entered a plea of 'not guilty' and set your bonds. Subsequent to that time, each of you have refused the appointment of Mr. Smead and have now employed Mr. William I. Purifoy to represent you. Is that correct?

MR. FRANKLIN: Yes, sir.

MR. REID: Yes, sir.

THE COURT: Now based on the statement of your brother-in-law to me this morning, are

each of you aware of the trial that you are receiving today? Do you feel like you are properly represented in court?

MR. FRANKLIN: Yes, sir.

MR. REID: Yes, sir.

THE COURT: I believe as to the defendant Franklin, do you feel that you are properly represented today in court?

MR. FRANKLIN: Yes, sir.

THE COURT: Adequately represented?

MR. FRANKLIN: Yes, sir.

THE COURT: As to the defendant Reid, are you properly and adequately represented?

MR. REID: Yes.

THE COURT: Then there is nothing I can do. I simply wanted to bring this to you and your attention with the complaint being made to the Court, and I simply am in accord with good justice, to see that justice is done to you and as well as to the State. Now you have employed this attorney and if you're satisfied with his services, I have nothing to say. That is all. Thank you."

At petitioners' post conviction hearing Mr. John M. Graves, the Prosecuting Attorney, testified on cross-examination as follows:

"Q. Let me ask you—describe for the Court if you would, beginning with the apprehension or whatever points are convenient or suppose just what went on with regard to Reid and Franklin as to how the wheels of justice ground out their result.

A. Well, briefly, as I remember, they were arraigned at which time they were apprehended and arraigned and at which time Judge Crumpler appointed Leonard Smead to represent them. They later advised me that they had retained Mr. Purifoy. There were several discussions with both Reid and Franklin with regards to whether or not they were satisfied with Mr. Purifoy's representations.

Q. What was the nature of these discussions?

A. At certain times that I discussed it with them they weren't sure they were satisfied with him representing them. It is my understanding, I believe, that one of their wives had paid Mr. Purifoy and retained him—that I discussed it with them, whether or not they wanted me to go to the Court and ask the Court to appoint them another lawyer.

Q. Did you offer to do this?

A. Yes.

Q. What was their answer?

A. Their answer was that they wanted to have Mr. Purifoy try the case . . . The same as it was during the trial."

In *Fay* v. *Noia*, 372 U. S. 391, 83 S. Ct. 822, 9 L. Ed. 2d 837 (1963), with reference to a post conviction petitioner who might deliberately by-pass the orderly procedure of the state courts, it was said:

"Although we hold that the jurisdiction of the federal courts on habeas corpus is not affected by procedural defaults incurred by the applicant during the state court proceedings, we recognize a limited discretion in the federal judge to deny relief to an applicant under certain circumstances. Discretion is implicit in the statutory command that the judge,

after granting the writ and holding a hearing of appropriate scope, 'dispose of the matter' as law and justice require,' 28 USC § 2243; and discretion was the flexible concept employed by the federal courts in developing the exhaustion rule. Furthermore, habeas corpus has traditionally been regarded as governed by equitable principles. United States ex rel. *Smith* v. *Baldi*, 344 U. S. 561, 573, 97 L. Ed. 549, 558, 73 S. Ct. 437 (dissenting opinion). Among them is the principle that a suitor's conduct in relation to the matter at hand may disentitle him to the relief he seeks. Narrowly circumscribed, in conformity to the historical role of the writ of habeas corpus as an effective and imperative remedy for detentions contrary to fundamental law, the principle is unexceptionable. We therefore hold that the federal habeas judge may in his discretion deny relief to an applicant who has deliberately by-passed the orderly procedure of the state courts and in so doing has forfeited his state court remedies."

To the same effect see *Henry* v. *State of Mississippi*, 379 U. S. 443, 85 S. Ct. 564, 13 L. Ed. 2d 408 (1965).

Thus when we remember that petitioners were arrested inside the Bank of Chidester in the early morning hours, that a large opening had been cut into a door to the bank vault and that burglarly tools including accetylene bottles and a cutting torch were on the floor of the bank near the vault, it is readily apparent that petitioners had no real defense and that their only hope in demanding a trial was to receive as small a sentence as possible. Furthermore since petitioners did not elect to testify at their postconviction hearing, the trial court had every reason to follow *Fay* v. *Noia, supra,* and deny them any postconviction relief.

It is only human that the jurors, the trial court and this court would be disgusted with petitioners' counsel under the circumstances. However, the fact remains that they refused sober and capable counsel appointed by the court and steadfastly clung to their employed counsel notwithstanding that both the prosecuting attorney and

the trial court advised them that the effectiveness of their counsel was questioned. Thus, like a horse, they were led to water but refused to drink for reasons known only to them. Consequently the trial court upon the record here properly denied them any relief.

I also concur in Justice Jones' opinion and the logic thereof is most demonstrable by the proposition that the time to yell rape is when it occurs. The petitioners here did not complain of the adequacy of their representation even after the verdict was brought in, but instead negotiated a concurrent plea of 21 years with the prosecuting attorney on other charges.

For the reasons stated, I respectfully dissent.

GEORGE ROSE SMITH, J., dissenting in part. The partial reversal in this case is a costly victory for the appellants. The new trial which the majority have seen fit to award them cannot possibly do them any good, but it may do them a vast amount of harm. That is, the majority reverse the 21-year maximum sentence that resulted from the appellants' having been represented by a drunken lawyer, but the majority affirm two companion 21-year maximum sentences that were entered upon the appellants' pleas of guilty to other charges of burglary and grand larceny. What earthly good can a new trial do the appellants? Even if they are acquitted they will be no better off than they are now, with two concurrent 21-year sentences facing them. On the other hand, they may be convicted and given an additional sentence to run consecutively after the other two. Obviously they would be better off if the majority had seen fir to affirm this case *in toto* instead of reversing it in part. The reversal is actually a Pyrrhic victory that can only enhance the appellants' bewilderment at the manner in which they are being solemnly treated by the courts.

I think it obvious that the sentences upon the pleas of guilty should also be set aside. Error is presumed to be prejudicial unless we can say with confidence that it was not. That disclaimer of prejudice cannot be made here.

The appellants originally pleaded not guilty to the two additional charges. At the conclusion of the first trial, which the majority correctly treat as a mockery of justice, and on the very day of that trial, the appellants were brought before the judge by the prosecuting attorney, who stated that the defendants had "advised" him that they would like to change their pleas. The trial judge, who undoubtedly thought the first trial to have been in compliance with the constitution, then went through the motions of informing the defendants of their right to counsel in the other two cases. I find it not at all surprising that the defendants, with the first trial just finished and fresh in their minds, were not greatly impressed by the court's offer to provide them with yet another lawyer. Certainly we cannot say with assurance that the pleas of guilty were not influenced to any degree whatever by the mock trial to which the accused had just been subjected.

Moreover, it is equally clear that the trial judge, believing the first maximum sentence to be a valid one, did not mean to impose any additional punishment upon the defendants as a result of their pleas of guilty, for he explicitly directed that all three sentences run concurrently. What else, under heaven, could the trial judge have done? He could not, with a straight face, have imposed lesser sentences, such as five years, to run concurrently with the other 21-year sentence. He did not mean to impose an additional sentence to run consecutively. Hence it is perfectly clear that the trial judge did not intend for the defendants' pleas of guilty to put them in any worse position than the one they already occupied as a result of their having been represented by a drunken lawyer. How then can the majority say that the declared error in the jury trial had no effect whatever upon the companion sentences? Of course, precisely the same considerations prevailed at the post-conviction hearing in the court below, because when the judge upheld the original jury verdict there was no reason for him to reconsider the companion sentences. In conclusion, I can only say that I am deeply disturbed by the demonstrable injustice and apparent insensitivity to the facts that are apparent in the majority's decision.

J. Fred Jones, Justice, dissenting. I would affirm the convictions in this case. The jury had no way of knowing whether Purifoy was employed by the appellants or appointed by the court. Certainly it would appear that the trial judge might have sent the attorney to jail and postponed the trial until he sobered up, but the trial judge was in a better position to view the situation as the events occurred in the courtroom than we are from the record of the events as they appear on the printed page.

The appellants were apprehended halfway through the wall of a vault inside a bank building. They were surrounded by cutting torches and other paraphernalia of the burglary profession including a pistol found inside the hole partially cut through the wall of the vault. There is nothing in the record to indicate that the appellants were below the average in mentality, with the possible exception that they were satisfied with their attorney's representation. Certainly if a mistrial had been declared and counsel had subsequently been appointed to represent them, the appellants would have had good cause to complain of the denial of their right to the services of employed counsel.

With nothing in the record to indicate otherwise, I am willing to assume that the appellants were capable of measuring the effect their counsel's conduct was having on the jury. If the effect of their attorney's conduct resulted in disdain for the attorney rather than sympathy for the appellants, that is a chance the appellants affirmatively took and insisted upon. The trial judge was in a much better position than we are in evaluating all the circumstances surrounding the trial of this case, including the intelligence of the appellants and their reasoning in proceeding in the trial with Purifoy as their attorney.

I would affirm.