Travis Robert REID, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 18980.

United States Court of Appeals
Ninth Circuit.

June 23, 1964.

Rehearing Denied Sept. 2, 1964.

Laddy H. Gross, Palo Alto, Cal., for appellant.

Sidney I. Lezak, U. S. Atty., and Donal D. Sullivan, Asst. U. S. Atty., Portland, Or., for appellee.

Before POPE, HAMLEY and MERRILL, Circuit Judges.

HAMLEY, Circuit Judge:

Travis Robert Reid, convicted as a second offender of the narcotic laws, appeals from the judgment of conviction and sentence.

He first contends that the trial court erred in failing to instruct the jury that the United States had to prove beyond a reasonable doubt that there was no entrapment.

The trial court instructed fully as to the elements essential to the defense of entrapment. It did not, however, expressly instruct the jury as to whether the burden of proof rested with Reid to prove unlawful entrapment, or with the prosecution to show that there was no unlawful entrapment. Nor did the court expressly instruct as to the quantum of proof necessary to sustain such burden wherever it lay. The trial court did give the usual general instruction on the presumption of innocence and to the effect that the burden was on the Government

to prove every essential element of the crime charged beyond a reasonable doubt.[1]

■ No objection was taken to any portion of the charge given or any omission from the charge. Counsel for Reid in fact advised the court: " * * * you thoroughly instructed the jury as far as I am concerned." It follows that, in view of Rule 30, Federal Rules of Criminal Procedure, Reid may not now question the lack of an instruction of the kind contended for, unless such lack constitutes plain error affecting his substantial rights, within the meaning of Rule 52(b), Federal Rules of Criminal Procedure.

■■ Reid testified that he knew the informer, Eugene Westbrook, prior to September 14, 1961, when the asserted narcotics transactions between him and Westbrook occurred, and knew at that time that Westbrook was an informer working for the Police Department and the "Narcotics Department." It is difficult to understand how one could be "entrapped" by another known by him at the time to be working with law enforcement officers.

Reid testified that on September 14, 1961, he had delivered a small quantity of narcotics to Westbrook for the personal use of Westbrook and the latter's wife, receiving thirty dollars, no part of which constituted profit for him. But he denied participation in either of the narcotics transactions which were alleged to have occurred on that day, one the wholesaling of eighty-five dollars worth of narcotics to Westbrook for resale, and the other the wholesaling of fifty dollars worth of narcotics to Westbrook for resale. The defense of entrapment is inconsistent with a contention that the transactions did not occur. See Gonzales v. United States, 9 Cir., 314 F.2d 750, 752.

Reid and the informer, Westbrook, contradicted each other as to which of them

---

1. In this connection the court instructed:
"You must consider the evidence in the light of this presumption. The presumption of innocence is sufficient to acquit a defendant unless presumption is outweighed by evidence satisfying the jury beyond a reasonable doubt of defendant's guilt."

made the initial contact which led to the narcotics transactions in question. But Reid did not deny Westbrook's testimony that Reid twice telephoned to Westbrook at the latter's apartment, once before each transaction was consummated. The first such telephone call was made by Reid to explain that he had been delayed in delivering narcotics, Lavern E. Gooder, a Narcotics Agent, corroborating Westbrook as to this call. The second telephone call was made by Reid after the first transaction to inquire " * * * how everything was. * * * " One who has himself initiated telephone calls in arranging a narcotics transaction is in a poor position to claim entrapment.

. Reid's credibility was also undoubtedly undermined by the fact, brought out for impeachment purposes, that he had a long criminal record, including one prior narcotics conviction. Moreover, while Reid had testified that he had never dealt in narcotics prior to September 14, 1961, there was received in evidence a long typewritten statement signed by Reid under oath, recounting four narcotic smuggling expeditions engaged in by him between May, 1960 and September 10, 1961, immediately preceding the transactions here in question.[2]

In Lopez v. United States, 373 U.S. 427, 436, 83 S.Ct. 1381, 10 L.Ed.2d 323, where a conviction was obtained on a charge of attempted bribery, the jury was instructed, without objection, that the burden of proof with respect to entrapment is on the defendant. Holding that the record did not disclose a sufficient showing that the defendant was induced to offer a bribe, the Supreme Court held that it could not conclude that he was prejudiced by the charge on burden of proof, even assuming that the burden called for was too great. Accordingly the Court declined to invoke the "plain error" rule and

did not consider the burden of proof question on the merits.

We reach a like conclusion here with regard to the showing that Reid was induced to sell narcotics, and similarly decline to invoke the "plain error" rule. It need only be added that there was no instruction in our case, as in Lopez, that the burden of proof to establish entrapment was upon the defendant. In fact a portion of the charge given, as quoted in note 1, comes close to placing the burden upon the Government to disprove entrapment beyond a reasonable doubt. We indicate no view as to the kind of instruction which would have been proper.[3]

Reid next contends that the trial court erred in receiving in evidence exhibit 4. This exhibit is a typewritten signed statement given by Reid to John H. Windom, a federal narcotic agent, about a month after Reid's arrest and while he was at liberty on his personal recognizance. In this statement Reid described several trips he had taken to Mexico to obtain heroin for one Arthur Palmer and subsequent activities in marketing this product.

Initially the Government sought to introduce only that part of the statement which dealt with a smuggling trip to Mexico which commenced on September 2, 1961, and concluded on September 10, 1961.

Under questioning by Government counsel and the court, Windom testified that no threats, promises or offers were made to obtain the statement or Reid's signature thereto. According to Windom, Reid was not at that time represented by counsel, and had not requested counsel, but he had been advised that any statement he made could be used against him in court. Counsel for defendant then objected to the admission of any part of the statement on the ground that it is

---

**2.** As recounted later in this opinion, Reid testified that his written statement was false and was given under threat of being sent to jail.

**3.** Among the leading decisions dealing with the burden of proof on the defense of en-

trapment, are the following: Gorin v. United States, 1 Cir., 313 F.2d 641, 653–654; United States v. Landry, 7 Cir., 257 F.2d 425, 428–429; United States v. Sherman, 2 Cir., 200 F.2d 880, 882.

"incompetent" and that it had been obtained on threats of arrest and promises of immunity. No objection was made (and none is made now) on the ground that Reid was not represented by counsel at the time.

The court then excused the jury and permitted counsel for Reid to question Windom concerning the manner in which the statement was obtained. The court also participated in this questioning, but no additional pertinent information was forthcoming. The court then indicated that it would permit introduction of the portion of exhibit 4 which the Government desired to read to the jury, whereupon counsel for Reid asked that the entire statement be received.

Subsequently, the court held the statement irrelevant, and therefore inadmissible, in the absence of any evidence tending to show entrapment. But Reid thereafter gave testimony in an effort to show that he had been entrapped. He also testified that he gave the statement under a threat of being sent to jail, and stated that the statement was false in substantial part. The Government then reoffered exhibit 4 and it was received in evidence without further objection.

■ The portion of the statement which the Government sought to introduce, pertaining to a narcotic smuggling expedition by Reid immediately preceding the transactions involved in this prosecution, was relevant on the issues of knowledge and intent involved in the crime charged. Reid was charged with knowingly receiving, concealing and facilitating the transportation of heroin which had been unlawfully imported into the United States, a violation of 21 U.S.C. § 174. The statement in question constitutes circumstantial evidence tending to show that the drug Reid sold to Westbrook had been unlawfully imported into the United States.

■ Relevant evidence which tends to prove a material fact in the case is admissible even though it incidentally shows that the accused committed another offense at a different time and place. Fernandez v. United States, 9 Cir., 329 F.2d 899, 908. We need not decide whether portions of the statement other than that which the Government sought to admit were legally admissible, since they were received at the request of Reid.

With regard to the voluntariness of the statement comprising exhibit 4, the Government laid a proper foundation for admissibility outside the jury's presence. In the presence of the jury, counsel for Reid was given full latitude to inquire into the matter. While Reid's testimony contradicted that of the Government witness on the question of voluntariness, the trial court was not convinced by his version. Neither was the jury which was adequately instructed to the effect that the admissions contained in the statement should be disregarded if the evidence did not convince beyond all reasonable doubt that they were voluntarily and understandingly made.

The court did not err in receiving exhibit 4 in evidence.

■ Reid argues that the trial court erred in receiving in evidence exhibit 5. This exhibit consists of two pages of notes written by Reid in which there is set out some of the information later incorporated into the typewritten statement introduced as exhibit 4. The Government offered exhibit 5 to rebut the suggestion brought out on cross examination of Windom that exhibit 4 did not accurately reflect the information given by Reid after his arrest.

When exhibit 5 was offered in evidence counsel for Reid advised the court that there was no objection to its admission. Reception of this evidence was not plain error affecting Reid's substantial rights.

■ Reid argues that "exhibit 3" may possibly have contained a confession by Reid in which event it might have been coerced, and, if so, its admission would be error. He asserts that the content of this exhibit cannot be discussed on this appeal because it is not in the record on this appeal.

The paper marked as exhibit 3 could not have been a confession because it was

a statement not by Reid, but by the informer, Westbrook. The paper was given to Reid during the trial pursuant to the so-called Jencks Act, 18 U.S.C. § 3500. It was never thereafter referred to except for a brief colloquy at the time exhibit 4 was under discussion. Nor was it received in evidence, which explains why it is not in the record before us. There is nothing in the record to indicate that the contents of this statement were made known to the jury. There was no error with regard to this matter.

 Finally, Reid, now represented by new counsel, contends that he was denied his right of competent counsel under the Sixth Amendment. In support of this argument reference is made to a place in trial counsel's argument to the jury where an attempt was made to draw significance from a delay in bringing Reid to trial, and to the action of the court in stopping this line of argument.[4] Our attention is also called to a point in the trial where the court terminated a line of irrelevant questions by Reid's trial counsel, the court commenting: "I have let you go very far because you are an inexperienced lawyer, but I just can go so far in letting you ask irrelevant questions."

The incidents in question indicate that, at the trial, Reid was provided with aggressive and sincere, as distinguished from timid or disinterested, representation. The asking of irrelevant questions, and the injection of criticism of the prosecution not germane to the case, were not prejudicial to Reid. Nor was the observation of the trial court that Reid's trial counsel was "inexperienced," the probable effect being just the reverse of prejudicial. A review of the entire record indicates that Reid was provided adequate trial representation and that the conviction was not due to the lack of such representation but to the evidence which was overwhelmingly against Reid.

One who asserts that his attorney did not provide legal representation adequate to meet the requirements of the Sixth Amendment has a heavy burden to sustain. This court has repeatedly held that it is not enough to show merely that the assigned counsel was inexperienced; it is necessary to show that counsel was "so incompetent or inefficient as to make the trial a farce or a mockery of justice." Peek v. United States, 9 Cir., 321 F.2d 934, 944. The burden was not sustained here.

Affirmed.

4. The delay in bringing Reid to trial was largely due to his flight from prosecution. During the course of the trial the court precluded the Government from bringing out the fact of flight. This explains why, when counsel for Reid sought to make a point of the delay during his argument to the jury, the court stopped him and remarked that it " * * * is a very unfair statement. * * * " Counsel for Reid took no objection to this remark at the time as being prejudicial, nor is it now so contended.