Fred R. HARRIS, Petitioner,

v.

Lawrence E. WILSON, Warden, San Quentin Prison, San Quentin, California, Respondent.

No. 42905.

United States District Court
N. D. California, S. D.

March 8, 1965.

N. Rommel Bondoc and Belli, Ashe & Gerry, San Francisco, Cal., for plaintiff.

Thomas C. Lynch, Atty. Gen., Michael R. Marron, Deputy Atty. Gen., San Francisco, Cal., for defendant.

WEIGEL, District Judge.

In April, 1954, Fred Russell Harris was convicted of armed robbery by a California Superior Court. He had pled guilty, but did not have the assistance of counsel at any stage of the proceedings against him. He now seeks a writ of habeas corpus, claiming that his constitutional rights have been violated (1) by the failure of the magistrate at his Preliminary Examination to assign counsel and (2) by the similar failure of the presiding judge at arraignment in Superior Court.[1] It appears that petitioner has exhausted his available state remedies.

On October 15, 1964, this Court issued an order to show cause to the Attorney General of the State of California. The return was filed November 6, 1964. It included a transcript of the proceedings at arraignment. Petitioner had furnished the Court with a copy of the transcript of proceedings at the Preliminary Examination. N. Rommel Bondoc, Esq., was assigned by this Court to represent the petitioner in the proceedings here and has commendably served without compensation. Following argument and briefing, both sides have submitted the case on the facts disclosed by the transcripts.[2]

It is conceded that failure to appoint counsel at the arraignment would have deprived petitioner of his constitutional rights, absent a valid waiver. The Attornel General argues that the transcript of the arraignment discloses such a waiver. As to the Preliminary Examination, the Attorney General argues that it is not a sufficiently "critical" stage of the proceedings so that the federal right to counsel applies. The Attorney General further contends that the petitioner's statements at the Preliminary Examination constituted a waiver of his rights to counsel at that point.

### I. *The Arraignment*

The transcript of the arraignment is short and is here set out in its entirety.

"THE CLERK: The matter of Fred Russell Harris.

"THE COURT: Fred Russell Harris, is that your true name?

"THE DEFENDANT: Yes.

"THE COURT: How old are you?

"THE DEFENDANT: Thirty.

"THE COURT: You live here in this County, do you?

"THE DEFENDANT: Yes sir.

"THE COURT: How long have you lived here?

"THE DEFENDANT: Since 1951.

"THE COURT: Fred Russell Harris is your correct name?

"THE DEFENDANT: Yes.

"THE COURT: The Court informs you you are entitled to a speedy public trial by an impartial jury, to be represented by an Attorney at all stages of the case, to have a reasonable bail fixed for you, to be confronted by witnesses against you, to have the aid of the Court to compel the attendance of any witnesses you may have. You can read?

1. The issue of lack of counsel at the arraignment is raised only obliquely in the petition. However the State Attorney General has fully argued the matter, and the Court liberally construes the petitioner's unassisted pleading.

2. The State has not challenged the petitioner's sworn allegation that he was without funds to secure his own counsel; that important fact is therefore accepted as admitted.

"THE DEFENDANT: Yes sir.

"THE COURT: Mr. Clerk, give the defendant a copy of the information. (The Clerk presents defendant with a copy of the information.) Have you an attorney?

"THE DEFENDANT: No sir, I would like to plead guilty, waive probation, get sentenced as soon as I can.

"THE COURT: If you can get what?

"THE DEFENDANT: Get my time as soon as I can.

"THE COURT: You see you are charged here with an armed robbery on the 3rd of April, this year, here in this County, in Franco's Market; it looks as though you got quite a lot of money.

"THE DEFENDANT: No sir, not a lot of money.

"The COURT: It charges also you were armed with a .32 automatic revolver at that time?

"THE DEFENDANT: Yes, I was with a pistol, it was not in working condition.

"THE COURT: It was not in working condition. It also charges before that you had been convicted of a felony, to-wit, passing bad checks in the State of New Mexico, served a term in the State Prison in New Mexico, is that true,

"THE DEFENDANT: Yes sir, that is true.

"THE COURT: Now, as to the charge of robbing Franco's Market, you want to plead guilty to that, do you?

"THE DEFENDANT: Yes sir, if I can get my time as soon as I can.

"THE COURT: If you can get what?

"THE DEFENDANT: Get my time as soon as I can.

"THE COURT: Well, about the quickest I can do for you is next Friday, will that be all right,

"THE DEFENDANT: Yes, that is all right.

"THE COURT: All right, Mr. Clerk, you will enter a plea of guilty to the charge and the admission of the prior; referred to the Probation Officer and continued to Friday next week."

■ Obviously, the only moment in these proceedings when petitioner might have waived counsel was when, to the inquiry as to whether he had an attorney, he responded that he did not have one and that he wanted to be sentenced as soon as possible. The Attorney General argues that this was a waiver of rights to *court-appointed* counsel for two reasons. First, the magistrate at the Preliminary Examination had mentioned that the judge in the Superior Court would appoint counsel if petitioner made such a request, so the state argues that petitioner was informed that he could have an attorney if he wanted one. Second, at the arraignment itself, the judge had informed petitioner that he was "entitled * * * to be represented by an Attorney at all stages of the case". These arguments are not well taken.

The United States Supreme Court has established stringent standards to determine the validity of purported "waivers" of constitutional rights.

"It has been pointed out that 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights and that we 'do not presume acquiescence in the loss of fundamental rights.' A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938).

In Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962), the record of the trial proceedings did not show that the trial judge explicitly offered and that the accused expressly declined the assistance of counsel. The Court held that no valid waiver could be assumed in such a situation. Mr. Justice Brennan observed:

"Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver." Id. at 516, 82 S.Ct. at 890.

Perhaps the most complete description of the requisites for a valid waiver of the rights to counsel was provided by Mr. Justice Black in Von Moltke v. Gillies, Superintendent of the Detroit House of Correction, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948).

"We have said: 'The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused—whose life or liberty is at stake—is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused.' To discharge this duty properly in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered." Id. at 723–724, 68 S.Ct. at 323. Also see Moore v. Michigan, 355 U.S. 155, 78 S.Ct. 191, 2 L.Ed.2d 167 (1957), and In re Johnson, 62 A.C. 336, 42 Cal.Rptr. 228, 398 P.2d 420 (1965).

■ It is plain, then, that the petitioner should have been made fully aware of the fact that he was entitled to court-appointed counsel and apprised of the full consequences of rejecting legal advice before he could deliberately waive his rights. Nothing in the record indicates that petitioner was fully aware of the length of sentence he faced, or that he was told what possible defenses he might have. Furthermore, in the proceedings at the arraignment, the judge never clearly offered to appoint counsel. He merely told the petitioner that he was "entitled" to unspecified rights to counsel. Petitioner's impatient response did not evaporate the trial judge's responsibility to make "a penetrating and comprehensive examination of all the circumstances" concerning the lack of counsel. Since there is absolutely nothing before this Court to indicate that petitioner was truly informed of his rights or the facts he would need to know for an intelligent relinquishment of those rights, the Court can hardly assume that he deliberately waived them. The writ of habeas corpus must be issued.

## II. The Preliminary Examination

The foregoing establishes petitioner's right to be released. However this Court's decisions are subject to review, and it is therefore appropriate to reach every issue which independently could establish petitioner's entitlement to freedom.

The first United States Supreme Court decision to hold that federal rights to counsel apply in state criminal proceedings was Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). And it was also in Powell that the Court established the rule that the right to counsel attaches at a stage in the judicial proceedings prior to the beginning of the trial. The Court observed:

"[D]uring perhaps *the most critical period* of the proceedings against these defendants, that is to say, from the time of their arraignment until the beginning of their trial, when consultation, thorough-going investigation and preparation were vitally important, the defendants did not have the aid of counsel in any real sense, although they were as much entitled to such aid during that period as at the trial itself." Id. at 57, 53 S.Ct. at 59. (Emphasis added.)

At the conclusion of the opinion, the Court further remarked:

"* * * [The] duty [to assign counsel] is not discharged by an assignment at such a time or under such circumstances as to preclude the giving of effective aid in the preparation and trial of the case." Id. at 71, 53 S.Ct. at 65.

■ Although these passages do not provide firm guidelines for future decisions in locating the "critical period" in any particular state criminal procedure, they do suggest important general considerations. Counsel must be assigned at a time when it might be helpful in *investigating* and *preparing* for the case. In Powell, the Court stressed the importance of the period from arraignment—at which time the defendants entered pleas of not guilty—until the day trial commenced. However, the rationale of Powell would support a holding that, as a general rule, counsel should be assigned *prior* to the time for the entry of a plea. It could hardly be denied that it is vital to any defendant's interest to have some information about the strength of his case before he makes up his mind how to plead.

The most recent Supreme Court decisions on the general matter of the stage of criminal proceedings at which counsel must be appointed are Hamilton v. Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed. 2d 114 (1961) and White v. Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963). In Hamilton, the defendant was deprived of the right to counsel at an Alabama court arraignment. Speaking for a unanimous Court, Mr. Justice Douglas stated:

"Arraignment under Alabama law is a critical stage in a criminal proceeding. It is then that the defense of insanity must be pleaded * * *, or the opportunity is lost. * * * Pleas in abatement must also be made at the time of arraignment. * * * It is then that motions to quash based on systematic exclusion of one race from grand juries * *, or on the ground that the grand jury was otherwise improperly drawn * * *, must be made.

"Whatever may be the function and importance of arraignment in other jurisdictions, we have said enough to show that in Alabama it is a critical stage in a criminal proceeding. *What happens there may affect the whole trial.*" Hamilton v. Alabama, supra, at 53, 54, 83 S.Ct. at 158, 159. (Emphasis added.)

In a footnote to this passage, Mr. Justice Douglas distinguished arraignment proceedings in other states where the arraignment is not "a part of the trial" but is "'a mere formal preliminary step to an answer or plea'." He implied that in the latter circumstance, appointment of counsel might not be constitutionally required.

White v. Maryland, supra, involved lack of counsel at a Maryland preliminary hearing. At that hearing, the defendant entered a plea of guilty. At a subsequent "arraignment", at which time he *was* represented by counsel, he pleaded "not guilty" and "not guilty by reason of insanity". Nevertheless, the orig-

inal plea of guilty was introduced as evidence in the ensuing trial. The United States Supreme Court reversed his conviction in a *per curiam* decision, remarking:

"Whatever may be the normal function of the 'preliminary hearing' under Maryland law, it was in this case as 'critical' a stage as arraignment under Alabama law. For petitioner entered a plea before the magistrate and that plea was taken at a time when he had no counsel.

"We repeat what we said in Hamilton v. Alabama, supra, [368 U.S.] at 55, 82 S.Ct. at 159, that we do not stop to determine whether prejudice resulted: 'Only the presence of counsel could have enabled this accused to know all the defenses available to him and to plead intelligently.'" Id. at 60, 83 S.Ct. at 1051.

The combined meaning of these two cases is partly summarized by the court in United States ex rel. Cooper v. Reincke, 333 F.2d 608 (2d Cir., 1964):

"From Hamilton v. Alabama and White v. Maryland, it is plain that there is no arbitrary point in time at which the right to counsel attaches in pre-trial proceedings. Even in White, decided after Gideon, the Court did not refer to counsel 'at every stage.' Rather, the 'critical' point is to be determined both from the nature of the proceedings and from that which actually occurs in each case." Id. at 611.

Considering the emphasis in both White and Hamilton on the irrelevance of a showing of *prejudice* from the failure to appoint counsel in any particular case, it seems that the controlling principle is this: Any stage of the judicial proceedings which is not purely "formal", any stage where the advice of counsel could "affect the whole trial", is a "critical point" at which, absent valid waiver, counsel must be appointed if the defendant is unable to obtain his own.

The White, Hamilton and Powell decisions are all distinguishable on their facts from this case. In each of them, defendants were denied counsel either at the time they entered pleas or during the period thereafter. In the California Preliminary Examination, on the other hand, it is true that no plea can be made when the defendant is not represented by counsel. Furthermore, as the Attorney General has pointed out, no "incriminating statement taken from * * * [petitioner] at that time when he was not represented by counsel [could] have been used in evidence against him [in California]." Also, "[u]nlike Hamilton v. Alabama, supra, under California law petitioner could not have waived any defense, procedural or substantive, by anything that occurred at the time of the preliminary examination."

Even so and despite these differences between the circumstances pertaining in California judicial proceedings and the situations in White, Hamilton and Powell, the rationale of the latter cases dictates a holding that the Examination *is* a "critical" stage at which the right to counsel attaches.

The function of the California Preliminary Examination is analyzed in Witkin, California Criminal Procedure § 132, pp. 127, 128.

"The principal purpose of the examination is readily seen by a comparison of the procedure of indictment and of information. A charge of felony by indictment can only be made after an inquiry and determination by a grand jury. * * * Hasty and unwarranted charges by information are avoided by a similar safeguard—the preliminary examination by a magistrate to determine whether there is reasonable cause to hold the defendant to answer. (See Jaffe v. Stone (1941) 18 C.2d 146, 150, 114 P.2d 335, 135 A.L.R. 775 ['The purpose of the preliminary hearing is to weed out groundless or unsupported charges of grave offenses, and to relieve the

accused of the degradation and the expense of a criminal trial'] ; * *).

"The preliminary examination also serves certain practical purposes:

"(1) It gives the defendant some idea of the prosecution's case, thus operating as a means of discovery, although the prosecutor will often limit his showing to the barest necessity. (See Orfield, p. 74; Moreland, Crim.Proc., p. 158.)

"(2) It records the testimony of witnesses who may, at the time of trial, be absent or incapacitated or dead; their transcribed testimony may be read into evidence. * * *

"(3) It may dispense with the introduction of evidence at the trial, where the defendant, with consent of the prosecution, agrees to submit the case on the transcript of the preliminary examination."

Perhaps the most convincing reason that presence of defense counsel at Preliminary Examination might "affect the whole trial" is the fact that the Examination is an initial adversary confrontation. The rest of the judicial proceedings can be completely avoided if the defendant achieves a victory at this stage. Moreover, it is the type of adversary hearing where counsel is most helpful. As Witkin points out, "[a]lthough the quantum of proof is less than that required on a trial of guilt * * *, the same rules of admissibility [of evidence] govern. Consequently no valid commitment can be based entirely on incompetent evidence. * * * However, incompetent evidence received without objection may be given its full probative effect." Id. at 133, 134. Furthermore, prosecution witnesses may be cross-examined and the defense may proffer its own witnesses. In all of these matters, the absence of defense counsel could have a crucial effect on the accused's opportunity to obtain a complete termination of the criminal proceedings at this early stage.

The fact that the Preliminary Examination is a species of criminal pre-trial discovery is another reason for requiring appointment of counsel at this point. On cross-examination, counsel could elicit information helpful for the defense. What is discovered at this point could affect the defense strategy for the rest of the criminal proceedings. If the prosecution's case seems irrefutable, it might be wise for counsel to advise a plea of guilty at arraignment in Superior Court, shifting the defense efforts to the pursuit of a more favorable sentence. On the other hand, if some major weakness in the prosecution's case should be exposed in cross-examination, this would bolster the defendant's determination to win acquittal.

The fact that the Examination serves the purpose of preserving testimony would be an important consideration in some cases, even though no facts have been adduced in this case to show whether this function of the Examination might have been significant here.

Very frequently in California, the Preliminary Examination is all the "trial" a defendant is accorded.

"It is a not uncommon practice for the defendant, on trial in the superior court after being held to answer, to stipulate that a transcript of the evidence taken at the preliminary examination may be introduced at the trial in lieu of the testimony covered therein. * * *

"This procedure may go to the extent of a stipulation for waiver of a jury and submission of the entire case to the trial judge on the reporter's transcript of testimony at the preliminary examination. (See People v. Wallin, supra [Cal., 208 P.2d 400]; People v. Romero (1950) 100 C.A.2d 352, 223 P.2d 511; * * *.)" Witkin, supra, § 355, pp. 346–47.

In many cases, if there has been defense counsel at the Preliminary Examination, it may be good strategy for the defendant to plead innocent and submit

the case on the transcript. The prosecution's burden of proof in the Preliminary Examination is much less than the burden of proof required for conviction; since the prosecution usually holds back some of its evidence until trial, the defendant may have a better chance on the prosecution's lesser showing.

Finally, the State of California itself has decided that an indigent defendant is entitled to assigned counsel at the Preliminary Examination. California Penal Code § 859, referring to the Preliminary Examination, now provides that "If the defendant desires and is unable to employ counsel, the court must assign counsel to defend him." This is manifest recognition of the critical importance of the presence of counsel at the Examination under California law and procedure.[3]

For these reasons, it must be concluded that the federal constitutional right to counsel attaches at the California Preliminary Examination.[4]

However, the Attorney General contends that petitioner waived his right to counsel at the Preliminary Examination. The basis for that argument is spelled out in the following passage from the Return to the Order to Show Cause.

"Only after the prosecutor had completed his case did petitioner indicate any desire for court-appointed counsel, and then he stated his 'wish to waive preliminary hearing and have the Court appoint me an attorney.' * * *

"It would thus appear that petitioner did not desire an attorney for the preliminary examination, but rather for later, trial proceedings."

The transcript of the Preliminary Examination shows, in relevant part, that the defendant appeared without counsel and that the magistrate proceeded with the hearing without any inquiry of the defendant regarding the absence of counsel to represent him. It was only after the State had presented its case, that the subject of counsel came up as follows:

"THE COURT: Again addressing myself to the Defendant, you are not represented by counsel; that is, you have no lawyer.

"THE DEFENDANT: No sir. I wish to waive preliminary hearing and have the Court appoint me an attorney, Mr. ———— the one that was here just a few minutes ago.

"THE COURT: That is too late now. We have already proceeded with the preliminary. You should have requested for one at the beginning of the hearing."

It would be preposterous to hold that this colloquy constituted a valid waiver of counsel. The defendant explicitly asked for counsel and the magistrate expressly refused to provide him with one. The fact that defendant said he wanted "to waive preliminary hearing" in no way indicates that he was willing to waive any rights to counsel at any time.

Hence, for the failure of the state to provide the petitioner with counsel at the Preliminary Examination, the writ of habeas corpus must be issued.

It is hereby ordered, subject to the stay below specified, that Fred Russell Harris, being illegally restrained of his liberty, be discharged from the custody of the State of California and from the custody of Lawrence E. Wilson, Warden

3. The discussion in text is limited to the requirements of the right to counsel insofar as they are imposed on the states by the Due Process Clause of the Fourteenth Amendment. But Supreme Court decisions based on the Equal Protection Clause could well compel the same result. See Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963).

4. It should be pointed out that my brother, Judge E. Avery Crary, reached the opposite conclusion on this question for reasons set out in Wells v. State of California, 234 F.Supp. 467 (S.D.Calif., 1964).

of San Quentin Penitentiary, Tamal, California, and from the custody of any other officers, employees, or agents of the State of California, which custody is pursuant to the conviction and sentence entered against him in the Superior Court of the State of California, in and for the County of Santa Clara, on April 23, 1954;

Provided, that the effect of this Order is stayed to and including March 15, 1965, to allow the Attorney General of the State of California time in which to seek, if so minded, a further stay from the United States Court of Appeals.