**Fred R. HARRIS, Petitioner,**

v.

**Lawrence E. WILSON, Warden, California State Prison, San Quentin, California, Respondent.**

**No. 42905.**

United States District Court
N. D. California.

Jan. 5, 1968.

John Kaplan, Stanford, Cal., for Harris.

Thomas C. Lynch, Atty. Gen. of California, San Francisco, Cal., for Wilson.

## MEMORANDUM OPINION AND ORDER

WEIGEL, District Judge.

On April 15, 1954, petitioner pleaded guilty to violation of Cal.Penal Code, §§ 211, 211a (armed robbery) and was subsequently sentenced to a term of imprisonment at San Quentin State Prison. After a number of unsuccessful collateral attacks on his conviction, both in state and federal court, petitioner filed the present petition for writ of habeas corpus on October 16, 1964, claiming, first, that he was expressly denied counsel at his preliminary examination and, second, that his plea of guilty at the arraignment was entered without the benefit of counsel or any waiver of that benefit.

On March 8, 1965, this court issued the writ of habeas corpus upon the determination that, under the then recent Supreme Court decisions in White v. State of Maryland, 373 U.S. 59, 83 S. Ct. 1050, 10 L.Ed.2d 193 (1963), and Hamilton v. State of Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961), the preliminary examination constituted a "critical stage" in the California criminal proceedings, and that denial of counsel was therefore a violation of the fourteenth amendment. The issuance of the writ was further predicated upon this court's determination that, based upon the record before it, petitioner could not be deemed to have validly waived counsel at the arraignment stage of the state court proceedings. Harris v. Wilson, 239 F.Supp. 204 (N.D.Cal.1965).

As might be expected, the Attorney General of California appealed from this decision. The Court of Appeals for the Ninth Circuit reversed. In so doing, the court of appeals held that the preliminary examination did not constitute a "critical stage" in California criminal proceedings and that, consequently, there was no constitutional requirement that the state appoint counsel for an indigent suspect. The court further held that the

question whether petitioner waived his right to counsel at the arraignment stage could only be determined after an evidentiary hearing and remanded the case for the purpose of holding such a hearing. Wilson v. Harris, 351 F.2d 840 (9th Cir. 1965), cert. denied, 383 U.S. 951, 86 S.Ct. 1213, 16 L.Ed.2d 213 (1966).

Before discussing what transpired at the evidentiary hearing and the conclusions reached by this court, a slight detour is necessary. On May 11, 1965, while this case was pending before the court of appeals, petitioner was released on parole. On June 8, 1966, after the decision by the court of appeals, petitioner was found guilty by a jury of violating Cal.Penal Code, § 470 (forgery). Petitioner was then returned to state prison to serve the sentence imposed for this conviction, and concurrently therewith, the remainder of the sentence imposed for the 1954 robbery conviction.

On April 25, 1967, undaunted by this turn of events, petitioner filed a motion for an evidentiary hearing. The Attorney General initially opposed this motion, relying on McNally v. Hill, 293 U.S. 131, 55 S.Ct. 24, 79 L.Ed. 238 (1934), and its progeny. *McNally*, when decided, stood for the proposition that habeas corpus could not issue to set aside an invalid judgment where petitioner was also held in custody pursuant to a lawful judgment.

However, recent events caused the Attorney General to withdraw his opposition to an evidentiary hearing. The *McNally* doctrine has diminished in vitality over the years. The most recent diminution is directly applicable to the facts in this case. In Arketa v. Wilson, 373 F.2d 582 (9th Cir. 1967), the Court of Appeals for the Ninth Circuit held that habeas corpus was an appropriate means to attack the validity of a prior conviction where it was possible that, if not for the prior, petitioner would have received probation for the most recent, uncontested, conviction. In a letter addressed to this court on May 31, 1967, the Attorney General agreed that Arketa v. Wilson, supra, "excepts the instant petition from the rule in McNally v. Hill, 293 U.S. 131, 55 S.Ct. 24 (1934)."

On August 29, 1967, an evidentiary hearing was held. At the hearing, the Attorney General had the initial burden of proof, that of demonstrating that petitioner had affirmatively acquiesced in proceeding without counsel at the time his plea was accepted. See Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962). The Attorney General satisfied that burden by introducing a portion of the transcript of the proceedings at the arraignment. That portion reads as follows:

> THE COURT: The Court informs you you are entitled to a speedy public trial by an impartial jury, *to be represented by an Attorney at all stages of the case,* to have a reasonable bail fixed for you, to be confronted by witnesses against you, to have the aid of the Court to compel the attendance of any witnesses you may have. You can read?
>
> THE DEFENDANT: Yes sir.
>
> THE COURT: Mr. Clerk, give the defendant a copy of the information. (The Clerk presents defendant with a copy of the information.) *Have you an attorney?*
>
> THE DEFENDANT: No sir, I would like to plead guilty, waive probation, get sentenced as soon as I can. (Emphasis added.)

Thus, there is not in this case the silent record that existed in Carnley v. Cochran, supra. Therefore, the burden shifted to petitioner "to show by a preponderance of the evidence that his acquiescence was not sufficiently understanding and intelligent to amount to an effective waiver." Id. at 516, 82 S.Ct. at 890; see, e. g., Moore v. State of Michigan, 355 U.S. 155, 78 S.Ct. 191, 2 L.Ed.2d 167 (1957); Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

In attempting to satisfy his burden of proof, petitioner stated at the evidentiary hearing that he did not understand the state judge to mean that he had a right to court-appointed counsel if he could not afford to retain counsel. (EV. TR. at 6–7). If this were found by the court to be true, there would be little doubt but that petitioner's acquiescence would not have met the constitutional standard.[1]

However, the events that transpired at the evidentiary hearing convince this court that, at the time of his acquiescence, petitioner did know that he had a right to court-appointed counsel. It appears that, on April 12, 1954, only three days before the arraignment, the following colloquy took place between petitioner and the judge presiding at the preliminary examination:

THE COURT: Again addressing myself to the Defendant, you are not represented by counsel; that is, you have no lawyer.

THE DEFENDANT: No, sir. I wish to waive preliminary hearing and have the Court *appoint* me an attorney, Mr. — the one that was here just a few minutes ago.

THE COURT: That is too late now. We have already proceeded with the preliminary. You should have requested for one at the beginning of the hearing.

\* \* \* \* \* \*

THE COURT: \* \* \* When you go to the Superior Court, you request the Court and they will *appoint* counsel for you. (Emphasis added.)

This colloquy is important in two respects. First, in asking the court to "appoint me an attorney," petitioner evidenced an understanding that he had a right to a court-appointed attorney if he could not afford to retain one. Second, petitioner was told that such an appointment would be made, upon request, at his arraignment.

Petitioner's explanation of this colloquy is totally lacking in credibility. At the evidentiary hearing, petitioner claimed that the statement that the Superior Court "will appoint counsel for you" meant to him only that, if he had the money, he could hire an attorney. (EV. TR. at 16). Further, petitioner claimed that he used the word "appoint" because he was told to use it by a lawyer that he knew.

■ Thus, this court is of the opinion that, when the judge at the arraignment informed petitioner that he had a right "to be represented by an Attorney at all stages of the case," petitioner understood that, if he could not afford an attorney, the court would appoint one for him without cost.

The fact that petitioner knew, at the arraignment, that he had the right to a court-appointed lawyer is not the end of the matter. This court must also inquire into whether petitioner succeeded in proving that his waiver of that known right was not competent or intelligent. See, e. g., Moore v. State of Michigan, supra; Johnson v. Zerbst, supra.

■ All the evidence adduced at the hearing points to the conclusion that the waiver was both competent and intelligent. It appears that, at the time of his conviction, petitioner was a literate man, thirty years of age, and reasonably familiar with criminal processes. He had

1. It is perhaps arguable that the state judge did not do all that he possibly could have done to ascertain whether petitioner's acquiescence was sufficiently understanding and intelligent. And, if that initial proceeding had occurred in federal court rather than in state court, it is possible that such omission would require that the conviction be set aside. See Von Moltke v. Gillies, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948). However, the Supreme Court has never imposed the Von Moltke standards of eliciting a valid waiver upon state judges. See, e. g., Spanbauer v. Burke, 374 F.2d 67 (7th Cir. 1966); Cox v. Burke, 361 F.2d 183 (7th Cir.), cert. denied, 385 U.S. 939, 87 S.Ct. 304, 17 L.Ed.2d 218 (1966). But see United States ex rel. Brown v. Fay, 242 F.Supp. 273 (S.D.N.Y.1965) (petitioner was sixteen years old at the time of his state conviction).

served two prison sentences, one while in the Army for being AWOL, and the other in New Mexico for forgery. It also appears that he was and is an intelligent man, more so perhaps than he would have the court believe.

For all the reasons stated above, it is hereby ordered that the petition for habeas corpus is denied.