STATE of Missouri, Respondent,

v.

Robert Lee WILKINSON, Appellant.

No. 52611.

Supreme Court of Missouri,
Division No. 1.

Feb. 12, 1968.

Norman H. Anderson, Atty. Gen., Jefferson City, Carl R. Gaertner, Sp. Asst. Atty. Gen., St. Louis, for respondent.

Roscoe E. Moulthrop, Bethany, for appellant.

STORCKMAN, Judge.

Defendant was convicted of burglary in the second degree and under the provisions of the Habitual Criminal Act was sentenced to nine years in the custody of the Department of Corrections. Sections 560.070, 560.095, and 556.280, RSMo 1959, V.A.M.S. Three points are raised by the defendant on appeal: that he was not accorded a constitutionally fair trial because of the misconduct of his trial counsel; that the circuit court erred in refusing to remand the case to the magistrate court for a preliminary hearing; and that the court erred in overruling an application of the defendant for a change of judge. While the sufficiency of the evidence to support the conviction is not questioned, a brief review of the facts constituting the offense will be helpful in understanding the import of the defendant's complaints.

During the night of April 8, 1965, a jewelry store owned and operated by Russell Whisler in the City of Trenton was broken into. A padlock was pried off a rear basement door, a bar was knocked off an interior door, and a hole was broken through a plasterboard wall near the top of a basement stairway leading into the store proper. A bag and tools were found in the room in which were located two safes, the combinations of which had been broken off. The outer portion of one safe had been pried away and the insulation was exposed and scattered about the room. Some merchandise was found stacked near the rear exit.

About 1:00 a.m. on the night in question, Olan Moore saw two men park a white two-door Pontiac automobile near his home which was about four or five blocks from the Whisler Jewelry Store. The two men, one of whom Mr. Moore identified as the defendant, left the car and walked toward the business district. One of the men was carrying a bag similar to the one found in the jewelry store. Since it was "a strange car", Mr. Moore notified the police by telephone and waited to see what would happen. About 5:30 a.m. he saw the two men return to the car without the bag. As they drove away a highway patrol car followed and when they were out of sight Mr. Moore heard the cars speed up and then the firing of shots.

In the meantime the Trenton police had notified the Highway Patrol and two patrolmen took up separate stations near the parked Pontiac. Later other officers started to "shake doors" in the business district and about 5:30 a.m. the back door of the jewelry store was found to be open. Patrolman C. J. Baker in a patrol car pursued the departing Pontiac; the driver lost control of the Pontiac and it ran off the pavement into a yard and the patrolman shot out its right rear tire. The Pontiac was then backed at high speed toward Patrolman Baker who fired four more shots from a riot gun through the rear window of the car. When the Pontiac came to a stop the defendant was slumped under the steering wheel in a wounded condition. He and his companion were arrested. The defendant was first taken to a Trenton hospital and then to Columbia where he was treated. Debris taken from the clothes worn by the defendant was examined by a chemist in the Highway Patrol Laboratory. This expert witness testified that particles of plaster and insulation material taken from the cuffs of defendant's trousers were similar to samples of material found in the jewelry store and that clothing fibers found hanging on the edges of the hole in the plasterboard wall of the jewelry store matched the fibers of the defendant's jacket. The defendant did not testify or offer any other evidence in his behalf.

The matters of which the defendant complains on appeal occurred for the most part prior to the actual trial in the circuit court. The transcript and other records filed by stipulation of the parties disclose that on April 23, 1965, the defendant appeared with a Trenton attorney in the Magistrate Court of Grundy County, furnished bond in the sum of $4000 for his appearance at a preliminary hearing in magistrate court on

May 7, 1965, and was released from custody. The defendant failed to appear on May 7 and his bond was forfeited. The magistrate further entered an order which recited that a letter received that morning from a Kansas City attorney purported to transmit an application and affidavit for continuance. The order further recited that the presence of counsel in person was required when any motion is taken up and considered and the hearing was continued to May 15, 1965. The hearing was further continued to May 21 and then to May 28, at which time the defendant appeared with a Kansas City attorney who presented the application for a continuance on the ground that he, the defendant's attorney, was a member of the general assembly then in session. By leave defendant amended the application to state that his counsel was the only attorney representing the defendant and that such attorney would be present and actively represent the defendant at any trial of the case. The application was then sustained and the hearing was continued to July 30, 1965; the forfeiture of defendant's bond was set aside.

On July 30, Louis Wagner, another attorney from Kansas City, entered his appearance as counsel for the defendant. The Kansas City attorney who had previously represented the defendant did not appear. Mr. Wagner filed an application for a "change of venue" which asserted that the defendant could not have a fair and impartial trial before the magistrate of Grundy County "by reason of the prejudice of the inhabitants of said county." The order overruling the application cited §§ 544.290 and 544.300 and concluded with this statement: "Whereupon, Louis Wagner, Attorney for Defendant, states to the Court that he will not participate in this preliminary examination as an Attorney for the Defendant; Defendant ordered by the Court to be present throughout this preliminary examination. Offer made by the Court to Louis Wagner, Attorney for Defendant, to allow him time to prepare Application for Disqualification of the Judge

of this Court; offer refused by said Wagner."

On August 2, 1965, an information was filed in the Circuit Court of Grundy County charging the defendant with burglary in the second degree and Louis Wagner entered his appearance as attorney of record on September 14, 1965, and the first Kansas City attorney withdrew. On November 22, 1965, the defendant was arraigned. Appearing in person and by attorney Wagner, he waived reading of the information and entered a plea of not guilty. Thereafter, the case was set for trial in April 1966 but was continued on defendant's application because his counsel was a member of the general assembly then in session. Four days before the case was set on June 30, 1966, an attorney from Trenton who was contacted by Mr. Wagner filed on behalf of the defendant an application for change of judge. The court indicated its intention to overrule the application but withheld the ruling to give the defendant an opportunity to apply for a writ of prohibition. The writ was not sought and the application was overruled.

At the setting on June 30, 1966, an attorney from St. Joseph appeared with the defendant and advised the court that the defendant had discharged Mr. Wagner and requested a continuance to enable new counsel to prepare a defense. The court permitted the additional counsel to enter their appearances, but stated that Mr. Wagner had talked to the court the previous week at which time Mr. Wagner gave no indication that he would not be present and ready for trial. The court ordered Mr. Wagner to appear later in the day, and when he did not do so he was found to be in contempt of court. The cause was continued at defendant's request to July 18, 1966. The next day, on July 1, Mr. Wagner appeared before the court with the defendant and other counsel. He advised the court he had been discharged by the defendant the day before the trial setting but that he would continue in the case with the consent of the defendant. The court ac-

cepted Mr. Wagner's apology and found he had purged himself of contempt.

At the hearing on July 1, the court noted that a question had been raised by counsel whether the defendant had a mental disease or defect rendering him unfit to proceed. On its own motion the court ordered that a mental examination be made at the State Hospital in Fulton. On August 23, 1966, on the basis of the examination, the court found the defendant capable of proceeding to trial. The case was set for trial on September 29, 1966. On September 23, 1966, Mr. Wagner and the defendant appeared before the court. Mr. Wagner advised the court that he had received a letter from his client stating that he no longer desired Mr. Wagner's services and Mr. Wagner applied for leave to withdraw. The state objected if the withdrawal would result in another continuance. The defendant was sworn and examined relative to his reasons for seeking to discharge Mr. Wagner. The court concluded that there was no assurance that any other attorney could represent the defendant in a more capable manner than Mr. Wagner or that the defendant would be any more cooperative with another attorney and denied the request because it was not for a proper purpose. The court advised the defendant, however, that he could employ additional counsel to represent him and to assist Mr. Wagner if he so desired. At the beginning of the trial Mr. Wagner renewed his request to withdraw. After ascertaining that there had been no change in circumstances since its previous ruling, the court again denied the request.

The trial began on September 29, 1966. Out of the hearing of the jury, the state proved prior convictions for burglary. The jury found the defendant guilty and the court assessed his punishment. Mr. Wagner represented the defendant throughout and thereafter prepared and filed a motion for a new trial. On October 7 present counsel entered his appearance. Mr. Wagner was permitted to withdraw on October 24, 1966. Thereafter, the motion for new trial was taken up, evidence was heard, and the motion was overruled.

The defendant's first contention is that the trial court erred in overruling the application made by his counsel on September 23, 1966, for leave to withdraw from the case. In this connection the defendant asserts that he was not accorded a constitutionally fair trial "in view of a long series of occurrences extending over a period of approximately one year during which the counsel for the defendant seeking permission to withdraw from the case * * willfully, negligently, improperly and unethically conducted himself and in utter contempt for the trial court". Willis v. Hunter, 10 Cir., 166 F.2d 721, cited by defendant, states the nature of effective assistance of counsel according to the constitutional mandate and the standards by which it is determined. The case holds that the accused was not deprived of the effective assistance of counsel. In Lunce v. Overlade, 7 Cir., 244 F.2d 108, 74 A.L.R.2d 1384, the court held the evidence established the invalidity of an Indiana conviction where the accused was represented by an Ohio attorney who came into the case belatedly and was unfamiliar with the Indiana practice. The defendant also cites Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R. 3d 974, but does not indicate its pertinency and we find none since statements of the defendant in custody or otherwise are not involved.

■ The defendant also refers us to 23 C.J.S. Criminal Law § 982(8), which is a comprehensive treatment on the subject of effective assistance of counsel for the accused. This section at pages 975–976 states: "Counsel for accused is vested with broad latitude in the conduct of the defense and he is not to be adjudged incompetent and his client deemed denied effective assistance of counsel by reason of the commission of what, in retrospect, appear to be errors of judgment. Mere errors, omissions, or mistakes by counsel do not establish a lack of effective representation by counsel.

Trial strategy, even though unsuccessful, is an inadequate basis for an attack on the competency of counsel, and this rule has been applied where counsel refrained from cross-examination or from calling certain witnesses, or where counsel decided that accused should not take the stand." This statement is quoted with approval by the court en banc in In re Goodwin, Mo., 359 S.W.2d 601, certiorari denied 371 U.S. 915, 83 S.Ct. 262, 9 L.Ed.2d 174.

■ Whether the accused has been afforded adequate and effective assistance of counsel must be determined from all the facts in the case considered in the light of the situation existing at the time the attorney was required to act and not as it appears to a critical reviewer in retrospect. In re Goodwin, Mo., 359 S.W.2d 601, 602 [2], certiorari denied 371 U.S. 915, 83 S.Ct. 262, 9 L.Ed.2d 174; State v. Turner, Mo., 353 S.W.2d 602, 605 [9, 10]; State v. Johnstone, Mo., 335 S.W.2d 199, 206 [14–17], certiorari denied 364 U.S. 842, 81 S.Ct. 81, 5 L.Ed.2d 66, rehearing denied 364 U.S. 906, 81 S.Ct. 237, 5 L.Ed.2d 199; State v. Eckenfels, Mo., 316 S.W.2d 532, 536 [10].

■ The defendant recognizes that the determination of whether counsel should be permitted to withdraw from a case is generally within the sound discretion of the trial court. State v. Mimms, Mo., 349 S.W.2d 925, 927 [3]. Furthermore, a convicted defendant who asserts that his attorney did not render adequate and effective legal assistance commensurate with constitutional standards has a heavy burden to sustain. Reid v. United States, 9 Cir., 334 F.2d 915, 919 [9].

It is quite apparent from the record that the acts and conduct of attorney Wagner which present counsel characterizes as negligent, improper, unethical and contemptuous were designed to delay the disposition of the criminal proceedings in the hope of obtaining an advantage for the defendant. It appears that Mr. Wagner was the only attorney retained by the defendant and that

he brought the other attorneys into the case as they suited his purposes. By this means two "legislative continuances" were obtained. The burglary was committed and the defendant was apprehended on April 8, 1965, and the trial and conviction was on September 29, 1966, almost a year and a half later. The delay both in magistrate and circuit court was brought about by the defendant and his attorneys. The defendant, 33 years of age at the time of trial, had five previous burglary convictions, all entered on pleas of guilty. The report of the psychiatric examination filed in circuit court stated that the defendant "has made his livelihood when not in institutions by being, in his terms, a professional burglar." Hearings before the circuit judge disclosed that attorney Wagner had advised the defendant to plead guilty to the pending charge, but the defendant was unwilling to do so without knowing what term of imprisonment would be imposed. If any real friction existed, it stemmed largely from this circumstance. When he was unable to get assurance in this respect and was unable to get further continuances, he went to trial.

■ It is noteworthy that none of the issues presented on this appeal relate to the manner in which attorney Wagner handled the trial on the merits. The obvious reason is that the case was defended in an experienced and capable manner. Objections made by defendant's counsel were sustained in numerous instances. His cross-examination of witnesses and argument to the jury were suitable to the circumstances. If the state's case had been less well prepared and presented, the result might have been different. The trial judge was meticulous in protecting the rights of the defendant and there was not the slightest indication of any bias or hostility growing out of the defendant's dilatory tactics. A review of the entire record discloses that the conviction was due to the overwhelming evidence against the defendant and not to a lack of adequate and effective legal representation. The court did not err in over-

ruling the application of defendant's counsel for leave to withdraw. State v. Riley, Mo., 394 S.W.2d 360, 363 [3]; State v. Ybarra, Mo., 386 S.W.2d 384, 386 [3]; State v. Ross, Mo., 375 S.W.2d 182, 185 [6]; State v. Worley, Mo., 371 S.W.2d 221, 224 [8]; State v. Mimms, Mo., 349 S.W.2d 925, 927 [3]; Reid v. United States, 9 Cir., 334 F.2d 915, 919 [10].

After the trial was commenced and three witnesses had been examined, attorney Wagner made an oral attack upon the jurisdiction of the circuit court on the ground that the defendant was not represented by counsel at the preliminary hearing before the magistrate. In support of his oral motion, defendant's counsel relied on exhibit 2 which was the magistrate's order of July 30, 1965, previously referred to, wherein an application by the defendant for a change of venue on the ground of prejudice of the inhabitants of the county was overruled. The order further recites that attorney Wagner then stated that he would not participate in the preliminary examination as an attorney for the defendant. The magistrate offered to allow counsel time to prepare an application for disqualification of the judge but the offer was refused and the defendant was ordered to be present throughout the preliminary examination. This exhibit was all that was offered in support of defendant's motion attacking the jurisdiction. The circuit judge found from the records that attorney Wagner had entered his appearance in magistrate court prior to the preliminary hearing, that he did not withdraw as counsel or apply for leave to withdraw and that the reasons why Mr. Wagner stated that he would not participate in the hearing were not disclosed to the court. The circuit judge concluded from the record that "the Defendant was, in fact, represented by an attorney at the time of the preliminary hearing" and overruled the motion attacking the jurisdiction.

◼ The defendant now contends that the trial court erred in overruling "the application of the defendant to remand the cause of action to the magistrate court for a preliminary hearing at which the defendant could be properly represented by counsel". He asserts that the preliminary hearing was a critical stage of the proceeding during which the constitutional rights of the defendant to a fair and impartial trial were permanently prejudiced and impaired. The defendant does not undertake to demonstrate in what respect his rights have been prejudiced. He cites Harris v. Wilson, D.C., 239 F.Supp. 204, and Bird v. Sigler, D.C., 241 F.Supp. 1007, which involved preliminary examinations in California and Nebraska where the nature of the hearing is very much different than in Missouri. He also cites Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, 93 A.L.R.2d 733, and Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, which are not controlling or persuasive on the facts of this case. The nature and functions of the preliminary hearing in Missouri are considered in numerous decisions among which are the recent cases of State v. Turley, Mo., 416 S.W.2d 75, State v. Durham, Mo., 416 S.W.2d 79, and State v. Turner, Mo., 353 S.W.2d 602. The ruling of the question need not rest on this ground, however, because we find from the records before us, as the trial court did, that the defendant was in fact represented by counsel at the time of the preliminary hearing. Nor was the legal representation a farce or a mockery. In addition to what has been previously stated, the record shows that Mr. Wagner has been an active trial lawyer for over forty years; most of his practice has been the defense of criminal cases; he had handled "hundreds" of such cases. He was selected and retained by the defendant. The reason of his refusal to "participate" in this hearing is not apparent from the record; we do know that the strategy of defense counsel generally is to observe and not actively contest the preliminary hearing since its purpose is merely to develop probable cause to justify holding the defendant and filing an information. Sometimes the prelimi-

nary hearing is waived entirely without any suggestion of impropriety. Ineffective representation in this respect has not been demonstrated and it does not appear from the record. The contention is denied.

■ The final contention is that the trial judge erred in overruling the application for a change of judge. It is conceded that the application was not timely filed, but the defendant urges that the trial judge in the exercise of a sound discretion should have entered an order disqualifying himself as permitted by S.Ct. Rule 30.12, V.A.M.R. No case is made for such action and none appears from the record. In spite of being faced with a series of delaying tactics the trial judge acted with patience and restraint that bespeaks a determination to accord the defendant a fair trial which was accomplished. The court did not err in overruling the application for a change of judge. State v. Crow, Mo., 388 S.W.2d 817, 822 [13]; State v. Shaw, Mo., 357 S.W.2d 894, 896 [2].

We have examined those parts of the record subject to review under S.Ct. Rule 28.02, V.A.M.R., and find them legally sufficient and devoid of error. Accordingly the judgment is affirmed.

HENLEY, P. J., concurs.

SEILER, J., concurs in separate concurring opinion filed.

*Concurring Opinion*

SEILER, Judge.

I concur, with the reservation that I do not believe the burden is any greater on the defendant in a claim of violation of constitutional rights pertaining to effective assistance of counsel than it is in any other claim of violation of constitutional rights of a defendant in a criminal conviction. The question is whether the demands of due process were met—whether there was a denial of that fundamental fairness without which no conviction can stand. I agree that such did not occur in the present case. But if the statement in the opinion, "Furthermore, a convicted defendant who asserts that his attorney did not render adequate and effective legal assistance commensurate with constitutional standards has a heavy burden to sustain", means there i to be some added burden placed on the defendant who asserts this particular constitutionally protected right, I respectfully state I do not believe this can constitutionally be done.[1]

---

1. As the principal opinion shows, the quoted statement is based on Reid v. United States (C.A. 9th) 334 F.2d 915, 919. As I read the Reid opinion, it seems to me that the statement was not at all necessary to the decision. Under the facts there stated, the question whether defendant Reid was denied the right of competent counsel was not a close one.