**UNITED STATES of America ex rel. August E. SCHARTNER, Jr., Petitioner,**

v.

**Lewis PIZZO, Warden, Lackawanna County Prison, Scranton, Pennsylvania**

and

**Noah L. Alldredge, Warden, United States Penitentiary, Lewisburg, Pennsylvania, Respondents.**

**No. 1301.**

United States District Court, M. D. Pennsylvania.

Jan. 10, 1972.

Graham C. Showalter, Lewisburg, Pa., for petitioner.

Marion E. MacIntyre, Deputy Dist. Atty., Harrisburg, Pa., for respondents.

OPINION

MUIR, District Judge.

On February 26, 1966, two men armed with pistols entered an Acme Market in Harrisburg, Pennsylvania. They forced the manager of the store and the district supervisor for Acme Markets to open the store safe and turn over to them approximately $270.00. On October 10, 1966, a jury returned a verdict of guilty of aggravated robbery against petitioner with respect to this crime. The Superior Court of Pennsylvania affirm-

ed the judgment and a petition for Allowance of Appeal to the Supreme Court of Pennsylvania was denied. In the present habeas corpus action pursuant to 28 U.S.C. § 2241 et seq., petitioner contends that a writ of habeas corpus should be granted or, at the very least, that he should receive a federal evidentiary hearing because certain pre-trial police identification procedures were impermissibly suggestive and because he received ineffective assistance from his counsel. For the reasons stated below, petitioner's request for relief will be denied.

In petitioner's state court trial, the Commonwealth called the store manager, the district supervisor and one clerk as its identification witnesses. All three Commonwealth identification witnesses testified that they were sure that petitioner Schartner was one of the armed robbers.

## I. THE PRE-TRIAL PHOTOGRAPHIC IDENTIFICATIONS

The store manager, Urban J. Halke, Jr., and the district supervisor, Gerald F. Coons, went to City Hall with the police shortly after the robbery to examine some photographs. Neither man could make any identifications. Sometime within the next six days, Halke was shown a single photograph: a "photocopy" of a rogue's gallery photograph of petitioner. This "photocopy" was blurred. Halke told the police that it could be of one of the robbers, but that he wasn't sure. (N.T. 35). Petitioner contends that this procedure violates the standard set forth in Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968):

"[C]onvictions based on eyewitness identification at trial following a pre-trial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."

Since this standard of due process is retroactive,[1] it is appropriate to apply it to the photographic identifications here which took place in 1966.

 The portions of 28 U.S.C. § 2254(d) pertinent to determining whether or not this standard of due process was satisfied are set out in the margin.[2]

In his opinion denying petitioner's (then defendant's) Motion for a New Trial, the state trial judge in this case found that the in-court identifications by the identification witnesses were "based upon their observation of Defendant at the scene of the robbery during its commission." (p. 1194)[3] Thus, the state court

---

1. See Stovall v. Denno, 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

2. § 2254(d) reads as follows: "(d) In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit—

"(1) that the merits of the factual dispute were not resolved in the State court hearing;

"(2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;

"(3) that the material facts were not adequately developed at the State court hearing;

"(4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceeding;

"(5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding;

"(6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding; or

"(7) that the applicant was otherwise denied due process of law in the State court proceeding;

"(8) or unless that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole concludes that such factual determina-

tion is not fairly supported by the record: . . . ."

3. Although the sentence in which this quote appears is ambiguous and could be interpreted as the trial judge's summation of the witnesses' testimony, even under such an interpretation a finding to this effect may be implied from the trial judge's discussion of petitioner Schartner's contention that he was entitled to a new trial because he was not represented by counsel at the lineup. In that discussion, at pages 1194–1195 of his opinion, the trial judge mentions the photographic indentifications along with the lineup identifications as one of the circumstances which brought the case within the Wade-Gilbert-Stovall line of decisions. He held that counsel was not required at the lineup because Stovall holds that Wade and Gilbert are not to be applied retroactively. His discussion shows that he was aware of the further Stovall holding that a pre-Wade confrontation must be evaluated to determine whether it "was so unnecessarily suggestive and conducive to irreparable mistaken identification that he [the defendant] was denied due process of law." 388 U.S. at 302, 87 S.Ct. at 1972. Because of this awareness he felt it was necessary to recapitulate all the pre-trial identification procedures. In holding that Stovall was not violated, he apparently relied on, and therefore found as a fact, the witnesses' testimony that their "in-court identification was based upon their observation of Defendant at the scene of the robbery during its commission." This finding of fact logically entails a finding of the independence of the in-court identifications from the pre-trial photographic identifications.

The analysis in this footnote is appropriate under Townsend v. Sain, 372 U.S. 293, 314, 83 S.Ct. 745, 757, 758, 9 L.Ed.2d 770 (1963). There the Court stated that in determining whether the merits of a factual dispute were resolved in the state court, the federal District Court should determine "whether the state court has impliedly found material facts" and that one way to do so is to ascertain whether "his view of the facts is plain from his opinion."

found that the in-court identifications had an origin independent of the pre-trial identification procedures; this finding satisfies the *Simmons* standard. Under 28 U.S.C. § 2254(d), this finding is presumed to be correct unless petitioner has established facts satisfying any of eight conditions. Petitioner has not contended that conditions (4), (5), or (7) pertain to his case. As noted above, condition (1) was met by the finding in the trial judge's opinion denying petitioner's Motion for a New Trial. For purposes of analysis of conditions (2), (3), (6), and (8), the factors set forth in United States v. Zeiler, 447 F.2d 993, 995 (3d Cir. 1971), as having an important bearing upon the true basis of a witness' in-court identification following an out-of-court photographic identification, are instructive:

"(1) the manner in which the pre-trial identification was conducted; (2) the witness' prior opportunity to observe the alleged criminal act; (3) the existence of any discrepancies between the defendant's actual description and any description given by the witness before the photographic identification; (4) any previous identification by the witness of some other person; (5) any previous identification of the defendant himself; (6) failure to identify the defendant on a prior occasion; and (7) the lapse of time between the alleged act and the out-of-court identification."

Approaching these factors seriatim: (1) identification witness Halke was shown only one photograph (N.T. 35); there was no testimony concerning what was said to him when he was shown the photograph or where he was when he was shown the picture; (2) Halke testified that the robbers, whose faces were not covered, were in the store about ten minutes, that the robbery occurred about a half hour before closing so that there was normal lighting in the store (see also N.T. 74), that petitioner accompanied him to the safe, that petitioner was the man to whom he gave the money, that he "continually looked at the two men trying to pick out different ways to identify them" (N.T. 27–28); (3) within an hour of the robbery, Halke described the man to whom he gave the money as about five feet nine inches tall, of slender build and dark hair (N.T. 25–26); this description fits petitioner; (4) Halke had not previously identified any other person (N.T. 34); (5) and (6) Halke apparently had not previously identified or failed to identify petitioner; and (7) the photographic identification was within five days of the robbery (N.T. 35). These factors show clearly that petitioner received a full hearing in the state court; the rest of the record shows it was also a fair hearing. The only material fact not adequately developed at the State court hearing is what was said to witness Halke when he was shown Petitioner's photograph. If something suggestive was said to Halke, that would increase the suggestiveness of the already strongly suggestive procedure of showing him just one photograph. However, it is my view that in spite of the real and hypothetical suggestive aspects of the photographic identification here, the record fairly supports the State court's factual determination that the in-court identification was independent of the out-of-court photographic identification.[4] Although this court has power to hold a federal evidentiary hearing, it does not appear to be appropriate to do so here because "the state-court trier of fact has after a full hearing reliably found the relevant facts." Townsend v. Sain, 372 U.S. 293, 313, 83 S.Ct. 745, 757, 9 L.Ed.2d 770 (1963). Furthermore, since the relevant factual determination indicates that the *Simmons* standard was

4. It is therefore not necessary to decide whether the failure of the police to present other photos to Mr. Halke at the time of the photographic tentative identification was justified by any urgen-cy because petitioner had not yet been arrested. See United States v. Fowler, 439 F.2d 133, 134 (9th Cir. 1971); Mason v. United States, 134 U.S.App.D.C. 280, 414 F.2d 1176, 1182 (1969).

satisfied, a writ of habeas corpus based on a violation of *Simmons* should not issue.

Petitioner also objects to the identification testimony of Mrs. Crea Reneker, a clerk at the Acme Market, on the ground that she too was subjected to an impermissibly suggestive pre-trial photographic identification procedure. Mrs. Reneker did not go to City Hall immediately after the robbery as Halke and Coons did, but like Halke, she was shown a blurred photograph of petitioner. She too told the police that it could be one of the robbers. (N.T. 57). Again approaching the *Zeiler* factors seriatim: (1) Mrs. Reneker was shown only one photograph at her home by a police detective (N.T. 57); (2) she testified that she had "not more than five minutes" to look at the robbers but that she was certain of her identification because the robbers were strangers in the store (she had worked there for six years), because they dressed differently from most of the store's customers, because of the long, triangular, sunken-cheeked face of the man who went to the safe with Mr. Halke (N.T. 51–52) and because she wasn't scared until after the robbers left (N.T. 56); (3) immediately following the robbery she described the man at the safe as young, slender build, long, triangular skinny face with flat cheeks, about five feet nine inches tall (N.T. 46); this description fits petitioner; (4) she made no previous identifications of anyone else (N.T. 56–57); (5) and (6) she did not identify or fail to identify petitioner on a previous occasion (N.T. 56–57); and (7) she was shown the one blurred photocopy of a photograph within five days of the robbery (N.T. 57). Particularly in light of this witness' careful and perceptive on-the-scene description which fits petitioner, it is my view that as was true with witness Halke's identification, the record fairly supports the state court's finding of independent origin, the State-court trier of facts has reliably found the relevant facts, and the *Simmons* standard was not violated.[5] United States v. Fowler, 439 F.2d 133 (9th Cir. 1971), relied on by petitioner, is distinguishable from the case *sub judice* because there the facts did not demonstrate an independent basis for the in-court identification. In addition, *Fowler* involved testimony by the identification witness on direct examination as to his pre-trial identification. At petitioner's trial, the out-of-court photographic tentative identifications were brought out on cross-examination. The pressure which the prosecution brought on the witness in *Fowler* to follow his pre-trial identification was not present here.

## II. THE PRE-TRIAL LINEUP IDENTIFICATIONS

Petitioner concedes, as he must under Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), that since the lineup here occurred before United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), he cannot invoke the holding of that case requiring the exclusion of in-court identification evidence which is tainted by exhibiting the accused to identifying witnesses before trial in the absence of counsel. However, relying on *Stovall*, he argues that the conduct of the lineup was so unduly suggestive as to taint fatally the in-court identification of him by the two Commonwealth witnesses who were at the lineup. As discussed above with regard to the photographic identifications, the trial court found that the in-court identifications were based on the witnesses' observation of the Defendant at the time of the robbery.

Witness Halke testified that six days after the robbery, he was called to City Hall for a lineup identification (N.T. 26). Standing in the hallway with a policeman, he looked through a one-way

---

5. It is therefore not necessary to reach the issue of whether in light of the other evidence in this case the admission of Mrs. Reneker or Mr. Halke's identification testimony would be harmless error under Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

mirror at four men (N.T. 27) who were all about the same height, had dark hair and were dressed alike (N.T. 35). He was asked if he could identify any of the men as robbers, not whether any of them were the same man as the man in the photograph he had been shown (N.T. 36). He told the policeman at that time that he was sure petitioner was one of the robbers. (N.T. 27).

Witness Reneker testified that she too was at the lineup six days after the robbery. She waited in the same room with Witness Halke before going out to the hallway to view the lineup through the one-way mirror (N.T. 49). The four men were about the same height. One of them had a round face. At some point, petitioner may have had on a hat such as had been worn by one of the robbers (and which apparently belonged to him—N.T. 111), but she said this hat didn't help her to recognize him (N.T. 50, 54).[6] She positively identified petitioner at that time.

█ In light of the descriptions given by these two witnesses at the time of the robbery, their ample opportunity to view the robbers and their testimony concerning the way in which the lineup was conducted, it appears that none of the eight conditions of 28 U.S.C. § 2254(d) have been shown to exist. Therefore, an evidentiary hearing on this matter is not required. Furthermore, the trial judge's findings of independent origin for the in-court identifications preclude the issuance of a writ of habeas corpus based on petitioner's contentions regarding the lineups.

### III. THE PRE-TRIAL PRE-LIMINARY HEARING

█ Identification witnesses Halke and Reneker testified at the preliminary hearing and identified petitioner as one of the robbers. Petitioner was at the hearing without counsel, but cross-examined the witnesses himself (N.T. 38). At this hearing, witness Reneker testified that petitioner was the robber with the hat on (N.T. 59). Identification witness Coons, who had not made any photographic or lineup identifications, observed this preliminary hearing.

Coleman v. Alabama, 399 U.S. 1, 11, 90 S.Ct. 1999, 2004, 26 L.Ed.2d 387 (1970) held that: "The test to be applied is whether the denial of counsel at the preliminary hearing was harmless error under Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)." Chapman's standard is that the court must be able to say without a reasonable doubt that the evidence or procedure complained of did not contribute to the verdict. Petitioner contends that he was prejudiced by the absence of counsel at the preliminary hearing in three ways. First, witness Coons watched the other two witnesses identify petitioner at the hearing; the implication is that this viewing influenced his in-court identification. His testimony shows that such influence is unlikely. For example, he describes why he is so positive of his identification (N.T. 75). Presumably the trial court based its finding that his in-court identification was independent of the preliminary hearing proceedings on this testimony; the possible influence of the preliminary

---

6. Mrs. Reneker testified that petitioner was not the man who wore the hat at the time of the robbery. However, if only petitioner was made to put on the hat in the lineup she viewed, a fact which does not appear in the record, then this procedure could be suggestive to her because it would have focused her attention on petitioner as the man the police were particularly interested in. For purposes of deciding whether a federal evidentiary hearing is required, I will assume that only petitioner was made to wear a hat but will bear in mind witness Reneker's testimony that petitioner did not wear a hat during the robbery and that the hat did not help her identify petitioner. It should also be noted that the wearing of the hat did not violate petitioner's Fifth Amendment rights. Holt v. United States, 218 U.S. 245, 252–253, 31 S.Ct. 2, 54 L.Ed. 1021 (1910).

hearing identifications by the other witnesses on witness Coons' testimony is therefore not per se ground for an evidentiary hearing nor a writ of habeas corpus. Assuming some influence arguendo, it has not been shown how counsel at trial, who was aware of witness Coons' presence at the preliminary hearing, could have more effectively assisted petitioner had he been present at the preliminary hearing. Second, petitioner notes that witness Reneker stated incorrectly at the preliminary hearing that Schartner was the robber who wore the hat at the time of the robbery. However, petitioner's counsel at trial was aware of this misidentification and cross-examined the witness about it (N.T. 59); furthermore, the trial judge charged the jury on this point (N.T. 241). Commonwealth v. Brown, 217 Pa. Super. 190, 269 A.2d 383 (1970), cited by petitioner, is distinguishable in that at the preliminary hearing there, the victim failed to identify the defendant who was without counsel, but this failure was not brought out at trial. Third, petitioner requested counsel at the preliminary hearing, requested a postponement to obtain counsel, and informed the magistrate that he was unable to defend himself. Since at the time of the hearing, petitioner was neither entitled to have counsel present nor was he called on to defend himself, this contention is without merit except insofar as it raises the question whether there was any prejudice to petitioner because counsel was not present at the preliminary hearing. I find that the absence and denial of counsel at the preliminary hearing did not contribute to the guilty verdict against petitioner and was harmless error beyond a reasonable doubt under the circumstances. Coleman v. Alabama, supra.

Before proceeding to petitioner's fourth area of objection, it must be noted that although each of the three pretrial proceedings discussed above has been viewed individually, the state court trial judge's actual finding was that the witnesses' in-court identifications had a basis independent of all the pre-trial proceedings. For the reasons presented with respect to the separate pre-trial proceedings, and based on this reliable finding after a full hearing, the cumulative effect of the three pre-trial proceedings is not a ground for a federal evidentiary hearing or for a writ of habeas corpus.

## IV. ASSISTANCE OF COUNSEL

▮▮ Petitioner alleges that his privately retained counsel's handling of his defense was so incompetent as to render his conviction a violation of the Fourteenth Amendment guarantee of due process. Petitioner cites Lunce v. Overlade, 244 F.2d 108 (7th Cir. 1957) which held that "where the representation of an accused by his counsel is so lacking in diligence and competence that the accused is without representation and the trial is reduced to a sham, it is the duty of the state to see that the essential rights of the accused are preserved by appropriate intervention." 244 F.2d at 110. The misconduct by counsel in that case, unfamiliar with the law of the state in which the defendants were tried, was flagrant: failure to challenge the sufficiency of the affidavit, which apparently did not charge the crime for which the defendants were tried and convicted; permitting incompetent, damaging hearsay evidence to be introduced; failing to request instructions on intoxication; voicing no objections to instructions given to the jury which were highly questionable and incomplete; failing to save his exceptions; and, in most of what he did do, being ineffective in not complying with local law. 244 F.2d at 110. United States ex rel. O'Brien v. Maroney, 423 F.2d 865 (3rd Cir. 1970) held that due process is not violated unless the " 'misconduct of his counsel [amounted] to a breach of his legal duty faithfully to represent his client's interests.' " 423 F.2d at 870. In United States ex rel. Carey v. Rundle, 409 F.2d 1210, 1213 (3rd Cir. 1969), the general standard was stated to be "that a constitutional question is presented if coun-

sel's performance was so incompetent or negligent as to constitute the proceedings a farce or mockery of justice shocking to the conscience of the court." United States ex rel. Washington v. Maroney, 428 F.2d 10 (3rd Cir. 1970), one of the very few cases in which ineffective assistance of counsel and prejudice thereby has been found, is distinguishable in that there counsel entered the case about ten minutes prior to trial and had no time to prepare for it, failed to object to a questionable confession, failed to impeach a key prosecution witness with a criminal record, and failed to call any witnesses. These facts, unlike those in petitioner's case, are shocking to the conscience of this court also. Petitioner alleges eleven reasons in support of his charge of incompetency. As will appear below, some of these reasons are without merit; the rest do not amount to misconduct which was a breach of counsel's "legal duty faithfully to represent his client's interests."

(1) Petitioner alleges it was incompetent to request petitioner, who had taken the stand on his own behalf, to explain his past criminal record to the jury. Counsel's request clearly was a tactical maneuver to avoid having this criminal record brought out by the Commonwealth. Petitioner contends, however, that this record could not have been brought out on cross-examination, and should not have been brought out on direct examination, because of the provisions of the Act of 1911, P.L. 20, § 1, 19 P.S. § 711, set out in the margin.[7] As petitioner alleges, no questions were asked of him to establish his good reputation and no evidence had been previously introduced to establish it. However, 19 P.S. § 711 does not, and did not at

the time of this trial, protect a defendant from having the Commonwealth call a court clerk to testify to defendant's record of prior convictions of felonies in an effort to impeach a defendant's credibility whenever the defendant testifies on his own behalf. See e. g., Commonwealth v. Butler, 405 Pa. 36, 47, 173 A.2d 468 (1961). Thus, counsel's tactical maneuver here was a sound exercise of discretion.

(2) Petitioner next contends that he was prejudiced because his counsel did not move to sequester the witnesses who were thus able to listen to each other's testimony. Commonwealth v. Kravitz, 400 Pa. 198, 217–218, 161 A.2d 861 (1960) holds that the sequestration of witnesses is in the discretion of the trial judge. Even if the trial judge would have granted a sequestration motion, it appears from the record in this case that petitioner was not prejudiced by counsel's decision not to move for sequestration. The testimony of each of the three identification witnesses was distinctive as to why they were able to identify petitioner.

(3) Petitioner contends that his counsel should have moved for a mistrial when a Commonwealth witness testified that after the police learned that petitioner owned a car which fitted the description of the robbery getaway car in appearance, make, and the last three digits of the license number, they went to the "R & I or B. C. I." files in Harrisburg to secure a photostatic copy of a photograph of him (N.T. 101). When this testimony was given, petitioner's counsel did raise an objection at side bar because these initials indicate rogue's gallery photographs. The Court sustained the objection and petitioner's

7. "§ 711. Hereafter any person charged with any crime, and called as a witness in his own behalf, shall not be asked, and if asked, shall not be required to answer, any question tending to show that he has committed, or been charged with, or been convicted of any offense other than the one wherewith he shall then be charged, or tending to show that he has been of bad character or reputation; unless,—

One. He shall have at such trial, personally or by his advocate, asked questions of the witness for the prosecution with a view to establish his own good reputation or character, or has given evidence tending to prove his own good character or reputation; or,

Two. He shall have testified at such trial against a codefendant, charged with the same offense."

counsel stated he did not wish the court to make a formal statement to the jury. Apparently he believed that "R & I or B. C. I." might not have any significance to the jury. While such testimony as was given here could be prejudicial to a defendant, petitioner has cited no case, and my own research has found none, which holds that it is grounds for a mistrial. For this reason, and also because petitioner's counsel was probably aware at this point in the trial that petitioner would later testify on his own behalf, at which time his prior record of felonies could be introduced, it was not incompetent of counsel to fail to request a mistrial.

(4) Petitioner submits that his counsel should have objected to the relevancy of certain questions which the prosecution asked petitioner concerning his ownership of guns (N.T. 216–217). Petitioner was asked whether he had ever owned any guns. This question was relevant since guns were used in the commission of the robbery. He answered that he owned a revolver approximately three months earlier (which would be after the date of the crime). In an area where one or more guns are owned by a large proportion of the male population, it is difficult to see the prejudice to Defendant allegedly arising from this answer.

(5) Petitioner next contends that he was prejudiced by his counsel's failure to object to the relevancy of identification testimony concerning one Allen, petitioner's alleged partner in the robbery, and testimony linking petitioner to Allen (N.T. 188). The identification testimony helped to clear up the confusion about which robber was identified when and by whom; at any rate, it was not prejudicial. The testimony linking petitioner to Allen arose from questions concerning an effort by petitioner and Allen while on bail to prove that if they walked into the Acme Market which had been robbed they would not be recognized. Testimony concerning this effort was not irrelevant. Further examination by the prosecution concerning petitioner's past relations with Allen was perhaps objectionable, but it is difficult to know whether counsel decided not to object for some reason such as that a link had already been established.

(6) Petitioner submits that he was prejudiced by his counsel's failure to object to testimony by a Commonwealth witness as to the *amount* of a bond petitioner was under when he jumped bail (N.T. 84). The testimony as to the *amount* of the bond was not the result of a question directly asking for this information. Counsel could not have had time to object. Once the statement was out, there was little he could do about it since it would certainly not have been ground for a mistrial. Furthermore, it is doubtful that this testimony aroused any sympathy for the bail bondsman, since losses are part of his business. Any prejudice to petitioner due to such sympathy is unlikely.

(7) Petitioner's next contention is that he was prejudiced by his counsel's failure to object when a police detective testified that:

> "[W]e were notified from the Turnpike Commission that an automobile fitting this description [of the getaway car] . . . was in this vicinity and at that time the operator of that car . . . gave his name as August Schartner, 320 Ridley Avenue, Ridley Park."

As petitioner notes, this statement was hearsay. However, his conclusion that he was prejudiced is fanciful.

(8) Petitioner contends that he was prejudiced because his counsel allegedly did not seek the identity of, nor interview as possible defense witnesses, any of the several customers and clerks who witnessed the robbery (N.T. 24–25). However, Commonwealth identification witnesses Halke and Coons were the two witnesses to the robbery who had the closest contact with petitioner. It appears from the record that no one else had an opportunity to observe petitioner for as long or as closely as did these two

witnesses.[8] They, as well as the third Commonwealth identification witness, made positive identifications. It is doubtful that a jury would give much weight to contrary testimony of witnesses who did not have the same opportunity to observe the petitioner. However, if it is true that petitioner's trial counsel made no effort to identify or interview possible defense witnesses, such a failure must be given some weight in determining whether his assistance was ineffective.

(9) Petitioner's ninth contention is of little merit: that he was prejudiced because his counsel failed to elicit the name of the third Commonwealth identification witness at his pre-trial lineup when only two such witnesses testified at trial. The testimony cited by petitioner to show that there were three witnesses at his lineup does not clearly refer to his lineup (N.T. 37); it may refer to the lineup of his alleged partner, Allen. This latter interpretation is supported by the testimony of a police detective in charge of the lineup. (N.T. 106).

(10) Petitioner submits that he was prejudiced because his counsel did not ascertain other Pennsylvania automobile licenses having the same last three symbols as petitioner's license. This contention relates to testimony by an Acme Market customer who was waiting in front of the market while his wife was shopping inside just before the time of the robbery. This witness testified that when his wife came out, he and she took the license number of a car which he had noticed making "suspicious" maneuvers. He testified that he was sure that the last three symbols were "50L" (N.T. 89) and that the car was a black Cadillac with a white convertible top, a 1955 or 1956 (N.T. 89). (A 1957 Cadillac fitting this description precisely was registered in petitioner's name [N.T. 100].) Assuming arguendo that petitioner's counsel was aware that such testimony would be presented at trial, or that after such testimony was presented he had sufficient time to act on it before the trial ended, and that he in fact did no research in this area, his omission would not appear to be at all unreasonable. It is assuredly very difficult to obtain information concerning the final three symbols, make, model, year and color of automobiles in Pennsylvania. Given this difficulty and the extremely small probability that another car and license plate of the same description could be found, counsel cannot be faulted in this connection.

(11) Finally, petitioner alleges that his trial counsel was ineffective in failing to submit any points for charge to the trial court. However, he has not pointed to any particular aspect of the charge, or omission from the charge, which was prejudicial to him. In fact, the charge was extremely fair to petitioner. For example, the charge pointed out the discrepancy in witness Reneker's testimony about which robber wore the hat during the robbery (N.T. 241).

Petitioner evidently has gone through the record in minute detail and has attempted to second-guess his trial counsel at every possible point. His only allegations of any merit are (2), (5), and (8) supra. Yet none of these allegations, if true, nor petitioner's other contentions, prove that his counsel did not faithfully represent his interests or flagrantly misconducted his defense. The assistance rendered to petitioner by his privately retained counsel was not merely not ineffective, it appears from the record to have been highly competent.

Petitioner's contentions having been found to be without merit, an order will be entered denying his petition for a writ of habeas corpus or in the alternative for a federal evidentiary hearing.

---

8. It is not clear from the record whether the police obtained the identity of any of the customers in the store nor whether any of the other clerks present had a good view of petitioner.